[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14952
Non-Argument Calendar

_____

D.C. Docket Nos. 6:17-cv-00689-JA-GJK; 6:13-cr-00304-JA-GJK-1

WILLIAM A. WHITE,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 19, 2021)

Before WILSON, MARTIN, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Petitioner William White, a federal prisoner proceeding *pro se*, appeals the district court's denial of his Federal Rule of Civil Procedure 60(b) motion, which challenged the district court's denial of his 28 U.S.C. § 2255 motion to vacate his sentence. On appeal, Petitioner argues that the district court abused its discretion in denying his Rule 60(b) motion because he had shown that the Government engaged in fraud or misconduct that prevented him from fully and fairly litigating his § 2255 claims of insanity and incompetence. After careful consideration, we discern no abuse of discretion and affirm the district court's denial of Rule 60(b) relief.

## I.      BACKGROUND

In 2013, a federal grand jury charged Petitioner with five counts of extortion by interstate communications, alleging that he was a white supremacist who had used internet accounts and usernames (including the email address nslf_helterskelter@hotmail.com and the screenname "Charlie Fucking Manson") to send and post violent threats to state and federal officials in an attempt to cause the dismissal of criminal charges against members of the American Front, a white supremacist organization. In 2014, a jury found him guilty, and the court sentenced him to 210 months' imprisonment. On direct appeal, we affirmed his convictions and sentences.

Petitioner then filed a *pro se* 28 U.S.C. § 2255 motion to vacate. In a fourth amended § 2255 motion filed in June 2017, Petitioner raised 13 grounds for relief with many sub-claims. Two grounds for relief are relevant here. First, in Ground 4, Petitioner alleged that he had been tortured while in federal custody in 2008, 2010, 2011, and during the course of his trial in 2014. In particular, he stated that in 2014 he was placed in solitary confinement in a small cell that was continuously illuminated by bright lights, which caused him to be incompetent during trial due to severe pain, sleep disruption, and periods of delirium, dissociation, and confusional psychosis. He stated that Dr. Eric Ostrov, a psychologist who had examined him in 2015 and 2016, diagnosed him with severe post-traumatic stress disorder ("PTSD"), "a major psychiatric disorder," as a result of having been tortured while in federal custody in 2008, 2010, 2011, and 2014. Based on these allegations, Petitioner claimed that (a) his torture violated his due process rights, (b) he was incompetent at trial, and (c) counsel was ineffective for failing to have him psychologically evaluated for incompetence.

Second, in Ground 9, Petitioner similarly alleged that he was tortured via solitary confinement in cells that were continuously lit, cold, and unsanitary while in state and federal custody in 2008, and that he was again tortured via solitary confinement while in federal custody in 2010 and 2011, causing him to suffer confusional psychosis, waking nightmares, delirium, dissociation, and an inability

to sleep. He alleged that Dr. Ostrov had prepared a psychiatric report in which he opined that Petitioner had "been suffering from PTSD, a major psychiatric illness, since September 2010." According to Petitioner, his PTSD was "capable of rendering [him] incompetent." Based on these allegations, Petitioner claimed that (a) trial counsel was ineffective for failing to investigate his psychiatric condition, which he alleged rendered him incompetent at the time of the offense and at trial, (b) trial counsel was ineffective for failing to present evidence of reduced mental capacity at sentencing, and (c) the Government had obstructed justice by destroying his prison records from 2011 in an effort to prevent him from presenting evidence of his incompetence.

In response, the Government argued, among other things that: "Although [Petitioner] claims that he currently suffers from a form a posttraumatic stress, [Petitioner] offers no evidence, aside from his own assertions, to support the fact that a psychological evaluation would have revealed that he was incompetent to stand trial at the time of trial." Accordingly, the Government argued that Petitioner had not shown a reasonable probability that a psychological evaluation would have shown that he was incompetent to stand trial. Further, the Government argued that an insanity defense would have required a showing by clear and convincing evidence that Petitioner was insane at the time of the offense, and that "[n]othing in

4

the record suggests a reasonable probability that the jury would have made such a finding in this case."

In reply, Petitioner argued that the evidence regarding his incompetence included not only his own statements regarding his psychological condition, but also "the medical report of Dr Ostrov, Exh E(a), the contemporaneous statements of Laura Blankman [an investigator with the federal defenders], Exh J(a), [and] the extreme sleep deprivation recorded in Exh E(h) [a prison administrative log]." (Emphasis in original.)  Although Petitioner's reply referenced exhibits, the record did not include those exhibits and Petitioner did not attach them to his reply.[1]

The court denied Petitioner's § 2255 motion.  As relevant here, the court found that Petitioner's argument in Ground 4 that he was incompetent to stand trial because he had been tortured while in custody was procedurally barred because he

---

[1] Throughout the § 2255 proceedings, Petitioner made several attempts to file exhibits of various types.  The district court twice denied Petitioner's motions to file voluminous exhibits exceeding 700 pages because he had failed to show good cause for expanding the record.  Then, after the Government responded to Petitioner's fourth amended § 2255 motion, Petitioner moved to file supporting exhibits.  The court denied the motion, however, because Petitioner had not identified the proposed exhibits.  In conjunction with his construed reply to the Government's response, Petitioner again moved to file supporting exhibits, which he described but did not attach for the court's consideration.  Among the numerous exhibits he sought to introduce was Dr. Eric Ostrov's report, which he described as "showing that [he] developed a major psychiatric illness with features such as dissociation, which is incompetence, as a result of torture, and, cruel, inhuman, and, degrading treatment ('CIDT') to which [he] was subject throughout the proceedings in this matter."  Notably, this appears to be the first time Petitioner sought to introduce Dr. Eric Ostrov's report.  Although Petitioner states on appeal that he had previously tried to file Dr. Ostrov's report, his prior motions to file exhibits did not list the report as a proposed exhibit.  In any event, the court denied the motion to file numerous exhibits in conjunction with his reply brief.

had failed to raise that issue on direct appeal. As to his claims in Ground 4 and Ground 9 that he was incompetent prior to and during the criminal proceedings, and that trial counsel was ineffective for failing to have him evaluated for competency, the court found that Defendant's allegations were "vague and conclusory" and that he "offer[ed] no evidence that a psychological evaluation would have revealed that he was incompetent." Finally, the court found that Petitioner's contention in Ground 9 that the Government obstructed justice by destroying his prison records was procedurally barred. Both the district court and this Court denied Petitioner a certificate of appealability ("COA") to appeal the denial of his § 2255 motion.

Then, in the district court, Petitioner filed the instant motion for relief from judgment under Federal Rule of Civil Procedure 60(b)(3), arguing that the Government and its counsel had committed misconduct and fraud during his § 2255 proceedings. Petitioner alleged that the Government had told the court that he "had not presented competent evidence to support [his] claims of incompetence during both the trial proceedings and at the time that the crimes were committed while knowing that the reason [he] had not presented competent evidence was that [the Government] was restraining [him] from doing so." He alleged that the Bureau of Prisons ("BOP") had prevented him from receiving an independent medical examination until August 2019, when the District Court for the Southern

6

District of Illinois compelled the BOP to allow Dr. Richard Samuels to conduct an examination and prepare a report. According to Petitioner, Dr. Samuels opined that Petitioner had suffered psychosis before the crimes were committed and during his trial as a result of his torture in federal custody. But for the Government's "fraud and misconduct," Petitioner argued, he could have submitted Dr. Samuels's report in support of his claims of incompetence. Further, "[i]n conjunction with the[se] frauds," Petitioner argued that "the United States and its agencies fraudulently concealed documents, lied to [his] defense counsels, engaged in medical malpractice, and, committed other acts of misconduct to prevent [him] from fully and fairly litigating this matter."

In addition to submitting a sworn declaration to support his motion, Petitioner submitted four medical reports. First, a report prepared in 2008 by Dr. James Corcoran concluded that Petitioner exhibited a narcissistic personality disorder but did not have a major psychiatric illness and was not psychiatrically unstable or dangerous to the community. Second, according to a 2009 report, Dr. Conrad Daum concluded that Petitioner did not have any mental disease or defect that would prevent him from understanding and adhering to right and wrong. Third, in a 2016 report, Dr. Eric Ostrov described Petitioner's account of traumatic events while incarcerated and diagnosed him with PTSD and a borderline personality disorder with narcissistic traits.

Finally, Petitioner attached the report of Dr. Samuels, who stated that the "specific purpose" of his psychological evaluation was "to help ascertain [Petitioner's] current mental condition that may have resulted from what [Petitioner] described to be traumatic events," in connection with Petitioner's medical malpractice lawsuit against the United States. Dr. Samuels diagnosed Petitioner with PTSD, which he stated was likely the result of his experiences in federal custody in 2008, 2010, and 2014. He also diagnosed Petitioner with narcissistic personality disorder. These diagnoses, Dr. Samuels opined, "confirmed" Dr. Ostrov's prior findings that Petitioner suffered from PTSD and a personality disorder with borderline and narcissistic traits. Dr. Samuels further opined that Petitioner exhibited many of the diagnostic criteria for paranoid personality disorder ("a pattern of pervasive distrust and suspiciousness of others") and delusional disorder, persecutory type ("the presence of one or [more] delusions that persist for at least one month"), but that additional testing and observation would be needed to differentiate between these diagnoses.

The district court denied Petitioner's Rule 60(b)(3) motion. The court found that his allegations of "fraud, misrepresentation, or misconduct by the Government" were "vague and conclusory." The court also found that, "[a]t best, Petitioner present[ed] issues already ruled upon by the [c]ourt, either expressly or by reasonable implication," because, in his § 2255 motion, Petitioner had

8

(1) argued that he suffered from psychosis before, during, and after the trial, and

(2) discussed being evaluated by Dr. Ostrov, who concluded that he suffered from

various mental conditions.  Accordingly, the court found that Petitioner had not

demonstrated any basis for vacating the denial of his § 2255 motion.  Following

the district court's denial of a COA, we granted Petitioner a COA on one issue:

"Whether the district court abused its discretion by denying [Petitioner's] Fed. R.

Civ. P. 60(b) motion."

## II.    DISCUSSION

On appeal, Petitioner challenges the district court's denial of his motion

under Federal Rule of Civil Procedure 60(b)(3) for relief from the court's order

denying his § 2255 motion.  "We review a district court's order on a Rule 60(b)(3)

motion for abuse of discretion."  *Scott v. United States*, 890 F.3d 1239, 1247 (11th

Cir. 2018).  "A district court abuses its discretion if it applies an incorrect legal

standard, applies the law in an unreasonable or incorrect manner, follows improper

procedures in making a determination, or makes findings of fact that are clearly

erroneous."  *Diveroli v. United States*, 803 F.3d 1258, 1262 (11th Cir. 2015)

(quotation marks omitted).

Rule 60(b)(3) allows a court to set aside a final judgment if the moving party

demonstrates that an opposing party obtained the judgment through fraud,

misrepresentation, or misconduct.  *Frederick v. Kirby Tankships, Inc.*, 205 F.3d

1277, 1287 (11th Cir. 2000); Fed. R. Civ. P. 60(b)(3).  A federal prisoner may use a Rule 60(b) motion to attack a defect in the integrity of a § 2255 proceeding, including, for example, fraud upon the court.[2]  *Gonzalez v. Crosby*, 545 U.S. 524, 531–32 & n.5 (2005) (addressing a Rule 60(b) motion in the 28 U.S.C. § 2254 context); *Gilbert v. United States*, 640 F.3d 1293, 1323 (11th Cir. 2011) (*en banc*) (applying *Gonzalez* in the § 2255 context), *overruled on other grounds by McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076 (11th Cir. 2017) (*en banc*).  To vacate a judgment under Rule 60(b)(3), a party must show by clear and convincing evidence that (1) "an adverse party has obtained the verdict through fraud, misrepresentation, or other misconduct," and (2) "the conduct prevented the losing party from fully and fairly presenting his case."  *Frederick*, 205 F.3d at 1287.

Here, the district court did not abuse its discretion in denying Petitioner's Rule 60(b)(3) motion because Petitioner did not show by clear and convincing evidence either that the Government engaged in misconduct or that any alleged misconduct prevented him from fully and fairly litigating his case.  First, Petitioner

---

[2]  To the extent that the federal prisoner seeks to add a new ground for relief or attack the district court's prior resolution of a claim on the merits, however, the motion constitutes a successive § 2255 motion over which the district court lacks jurisdiction absent prior authorization from the appropriate court of appeals.  *Gonzalez v. Crosby*, 545 U.S. 524, 531–32 & n.4 (2005); 28 U.S.C. §§ 2255(h), 2244(b)(3)(A); *Farris v. United States*, 333 F.3d 1211, 1216 (11th Cir. 2003) (noting that, "[w]ithout authorization [from the appropriate court of appeals], the district court lacks jurisdiction to consider a second or successive [§ 2255 motion]").

did not show that the Government engaged in misconduct.  Petitioner's primary argument was that the Government had committed fraud in the § 2255 proceedings by arguing that Petitioner could not offer evidence that he was incompetent at trial or insane at the time of the crime, while simultaneously obstructing his attempt to obtain a medical examination from Dr. Samuels, whose report would have supported his claims.  Petitioner's evidence of fraud or misconduct, however, fell far below the clear-and-convincing-evidence standard.

First, Petitioner argued that the Government had made false statements to the court when it argued in response to his fourth amended § 2255 motion that "[Petitioner] offers no evidence, aside from his own assertions, to support the fact that a psychological evaluation would have revealed that he was incompetent to stand trial at the time of trial," and that "[n]othing in the record suggests a reasonable probability that the jury would have made [an insanity] finding in this case."  These statements, however, were accurate when the Government filed its responsive brief.  At that point, the record did not contain any supporting medical documentation and Petitioner relied solely on his own assertions that he was suffering from psychological defects at the time the crimes were committed and during his trial.  Only after the district court denied his § 2255 motion—when Petitioner filed his Rule 60(b)(3) motion along with Dr. Samuels's and Dr. Ostrov's reports—did the record contain medical evidence regarding Petitioner's

11

mental status.  The record therefore belied Petitioner's contention that the

statements in the Government's responsive brief were false.[3]

Despite the accuracy of the Government's statements, Petitioner argued that

the statements were nevertheless misleading or fraudulent because the Government

did not disclose to the court that, in coordination with the BOP, it was

simultaneously preventing him from obtaining an independent medical

examination from Dr. Samuels.  Specifically, he alleged that, when he asked to be

examined by a private medical professional, he was informed that "the BOP would

only allow such a visitor if they were working with an attorney."  But according to

Petitioner, he "later learned that this was not the policy" and that "the BOP would

not allow such a visitor at all."  Petitioner asserted that he only received an

independent medical examination after the District Court for the Southern District

of Illinois compelled the BOP to permit Dr. Samuels to examine him and offer an

opinion regarding medical malpractice in April 2019.  Petitioner further alleged

that the Government's attorneys were responsible for the BOP's actions in denying

him access to a private medical examiner because "the BOP ha[d] been in

continual contact with the [prosecution team,]" as evidenced by the fact that the

---

[3]  Although Petitioner notes on appeal that the district court had previously struck from the
record his proposed exhibits, including Dr. Ostrov's report, he does not challenge the court's
orders to that effect.  In any event, even if we assumed that the court abused its discretion in
striking Petitioner's exhibits, that would not show that the Government's statements about what
evidence the record contained were false or misleading when it filed its responsive brief.

FBI and U.S. Attorney's Office had sent informants into the prisons seeking his cooperation on other matters.

These allegations, however, did not support an inference that the prison had acted with a fraudulent or otherwise improper motive in denying access to a private medical examination, and thus did not show that the Government had misled the court during the § 2255 proceeding. Indeed, according to Petitioner, "the BOP would not allow such a visitor at all," meaning that the BOP's official policy prohibited any prisoner from being visited by a private medical examiner. This allegation undermines not only his contention that the BOP treated him unfairly in denying his request for a private medical evaluation but also his suggestion that the U.S. Attorneys litigating his § 2255 motion influenced the BOP's denial of that request. Without some evidence that the Government's attorneys conspired with the BOP to improperly deny his request for an independent medical examination, there was no factual basis for finding that the Government engaged in fraud or misconduct when it pointed out the lack of medical evidence supporting Petitioner's § 2255 claims. Accordingly, the district court did not abuse its discretion in rejecting Petitioner's arguments regarding Government misconduct.

Even if Petitioner had proven Government misconduct related to the § 2255 proceeding, however, the district court did not abuse its discretion in denying his Rule 60(b)(3) motion because he also failed to show that the alleged misconduct

13

prevented him from fully and fairly litigating his claims of insanity and incompetence.[4] *Frederick*, 205 F.3d at 1287.  In his Rule 60(b)(3) motion, Petitioner argued that the Government had "obstructed [his] ability to obtain the medical evidence contained in Dr Samuels' report."  According to Petitioner, "Dr Samuels ha[d] found that [he] was suffering from thought dysfunction and paranoid delusions," which he asserted were "forms of incompetence," during the criminal proceedings and before the crimes were committed.  Petitioner contended that, if he had been able to present Dr. Samuels's report, the court could not have denied his § 2255 claims "on the basis that [he] lacked evidence" of incompetence.

The copy of Dr. Samuels's report that Petitioner attached to his Rule 60(b)(3) motion, however, did not bear out Petitioner's contentions.  As an initial matter, Dr. Samuels did not purport to evaluate whether Petitioner suffered from a mental defect when the crimes were committed or during his trial.  Rather, Dr. Samuels stated that the purpose of his evaluation was to ascertain Petitioner's "current mental condition," as of 2019, in connections with his medical

---

[4]  A defendant is incompetent to stand trial if his "mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Indiana v. Edwards*, 554 U.S. 164, 170 (2008) (emphasis omitted) (quotation marks omitted).  To establish the affirmative defense of insanity, a defendant must prove by clear and convincing evidence that, "at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts."  18 U.S.C. § 17(a), (b).

14

malpractice lawsuit against the United States.  Thus, the report had no bearing on Petitioner's claims of incompetence and insanity years earlier.

Further, Dr. Samuels findings largely mirrored and "confirmed" Dr. Ostrov's prior diagnosis—that Petitioner suffered from PTSD and a narcissistic personality disorder—which Petitioner had already brought to the court's attention in his fourth amended § 2255 motion.  While Dr. Samuels also noted that Petitioner exhibited characteristics of paranoid personality disorder and a persecutory-type delusional disorder, he could not differentiate between the diagnoses and did not purport to diagnose Petitioner as suffering from either disorder before 2019.  Thus, to the extent that Dr. Samuels's findings went beyond Dr. Ostrov's diagnoses, which Petitioner had previously described for the court, they were immaterial.[5]  Petitioner therefore failed to show that his inability to present Dr. Samuels's report prevented him from fully and fairly litigating his claims.[6]

---

[5]  In reply, Petitioner argues that Dr. Samuels also diagnosed him with "thought disfunction, 'difficulties in cognitive processing such as confusion, irrational beliefs, inattention, forgetfulness, misunderstandings, and, misperceptions.'"  The record belies this argument. While Dr. Samuels noted that Petitioner "rate[d] highest in Thought Dysfunction" on the Minnesota Multiphasic Personality Inventory, he did not diagnose Petitioner with thought disfunction.

[6]  We note that Petitioner offered four other grounds for relief in his Rule 60(b)(3) motion, none of which warranted relief.  Three of these grounds did not concern misconduct related to the § 2255 proceeding and thus did not call into question the integrity of that proceeding.  First, Petitioner's argument that the BOP had obstructed justice by destroying his prison records before 2013 did not challenge the integrity of the § 2255 proceedings itself.  Indeed, Petitioner had raised that argument as a ground for relief in his § 2255 motion at the outset of the proceedings.

15

In short, Petitioner failed to show by clear and convincing evidence either that the Government engaged in misconduct related to his § 2255 proceeding or that any alleged misconduct prevented him from fully and fairly litigating his § 2255 claims. We therefore discern no abuse of discretion in the district court's denial of Rule 60(b)(3) relief.

## III.   CONCLUSION

Petitioner failed to show that the Government obtained the denial of his § 2255 motion through fraud, misrepresentation, or misconduct. Accordingly, the district court did not abuse its discretion in denying his Rule 60(b)(3) motion.

**AFFIRMED.**

---

Second, Petitioner's contention that the U.S. Attorneys lied to his defense counsel during his trial addressed alleged misconduct with respect to his criminal proceedings, not the post-conviction proceedings. Third, Petitioner argued that the BOP had engaged in medical malpractice, but whether that is true had no bearing on the Government's conduct in the § 2255 proceedings. As a fourth ground for relief, Petitioner asserted that the Government had not timely produced records regarding his torture in accordance with his Freedom of Information Act ("FOIA") requests. However, this conclusory allegation failed to prove by clear and convincing evidence that the Government engaged in misconduct because it did not establish that the Government had violated its FOIA obligations, much less that it had done so to obstruct Petitioner's § 2255 proceeding.

16