[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-13659

_____

D.C. Docket No. 2:13-cv-00057-LGW-JEG

JORGE CORTES-MORALES,

Petitioner-Appellant,

versus

SUZANNE R. HASTINGS,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(June 27, 2016)

Before WILLIAM PRYOR, ANDERSON, and PARKER,[*] Circuit Judges.

PER CURIAM:

_____

[*] Honorable Barrington D. Parker, Jr., United States Circuit Judge for the Second Circuit, sitting by designation.

This appeal involves an effort by petitioner Jorge Cortes-Morales, convicted and sentenced for being a felon in possession of a firearm, to invalidate his sentence on the ground that he no longer qualifies for a mandatory sentencing enhancement. Cortes-Morales brings this petition pursuant to 28 U.S.C. § 2241 seeking to obtain the benefit of revised New York sentencing laws, enacted in 2004 and 2009, which had the effect of retroactively lowering the penalties for certain drug offenders. He argues that, as a consequence of these reductions, he no longer qualifies for a mandatory sentencing enhancement as an armed career criminal under 18 U.S.C. § 924(e). Cortes-Morales sought similar relief in an earlier § 2241 petition and the district court held that he could receive relief in federal court only if he first obtained a resentencing in New York courts. After trying and failing to secure such a resentencing, Cortes-Morales now seeks relief once again under the same theory. The district court below determined that it lacked jurisdiction to hear the claim. Because Cortes-Morales admits that he is not eligible for resentencing under the revised New York sentencing laws, we affirm the judgment of the district court.

## I. BACKGROUND

### A.  Predicate Offenses and ACCA Conviction

The origins of this case date back to December 26, 1990, when Cortes-Morales was arrested in Brooklyn, New York for the sale of heroin and

2

subsequently charged with criminal sale of a controlled substance.  Cortes-Morales pled guilty to attempted criminal sale of a controlled substance in the third degree under N.Y. Penal Law §§ 110.00, 220.39, a class C felony.  At the time of his guilty plea, the maximum sentence in New York for a class C felony was fifteen years.  The plea agreement provided for one day in jail and five years of probation.

On May 21, 1991, Cortes-Morales was again arrested in Brooklyn for selling drugs and pled guilty to criminal sale of a controlled substance in the third degree under N.Y. Penal Law § 220.39, a class B felony.  At the time of his guilty plea, the maximum sentence in New York for a class B felony was twenty-five years. The court sentenced Cortes-Morales to concurrent sentences of one-and-a-half to three years for both the 1990 class C felony and the 1991 class B felony.  He was subsequently resentenced for the 1990 class C felony to a concurrent sentence of one to three years.  Cortes-Morales completed those sentences in May 1994.

In 1997, Cortes-Morales was arrested in Puerto Rico for unlawful possession and use of a firearm, and he pled guilty to a state charge of aggravated assault. Cortes-Morales was ultimately sentenced to two years' imprisonment, though he was released before completing his sentence.

In September 2005, Puerto Rican authorities executed a search warrant of Cortes-Morales's home and discovered firearms and drugs.  Federal authorities subsequently charged him with being a felon in possession of a firearm in violation

3

of 18 U.S.C. § 922(g), as enhanced by the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e).  The ACCA provides a mandatory statutory minimum of fifteen years for any individual who violates 18 U.S.C. § 922(g) and has three predicate convictions "for a violent felony or a serious drug offense, or both."  *Id.* § 924(e)(1).  A "serious drug offense" is one punishable by a "maximum term of imprisonment of at least ten years."  *Id.* § 924(e)(2)(A)(ii).  Absent the mandatory ACCA enhancement, Cortes-Morales's maximum sentence would have been ten years.  *Id.* § 924(a).

Because there was no dispute that he was an armed career criminal, Cortes-Morales pled guilty to the charge, agreed to a prison term of 240 months, and waived his right to file a direct appeal.  The district court in Puerto Rico sentenced him to 210 months' imprisonment.

In 2007, Cortes-Morales filed a § 2255 habeas petition *pro se*, claiming that his plea was involuntary, the conviction violated double jeopardy, and he had received ineffective assistance of counsel.  The district court partially granted the petition, ordering that Cortes-Morales's federal prison term should run concurrently with a sentence he received on similar charges in Puerto Rico, but denied the petition in all other respects.  The U.S. Court of Appeals for the First Circuit affirmed.

4

*B.  New York Sentencing Amendments*

In 2004, the New York legislature passed the Drug Law Reform Act of 2004 (the "2004 DLRA"), 2004 N.Y. Laws ch. 738, to "reform the sentencing structure of New York's drug laws to reduce prison terms for non-violent drug offenders, provide retroactive sentencing relief and make related drug law sentencing improvements." *Rivera v. United States*, 716 F.3d 685, 688 (2d Cir. 2013) (internal quotation marks omitted) (quoting N.Y. State Assembly Mem. in Supp. of Legislation at 3, 6 (2004), *reprinted in* Bill Jacket, 2004 A.B. 11895, ch. 738). Among other things, the 2004 DLRA lowered the maximum sentences for class B felonies to nine years and for class C felonies to five-and-a-half-years.  2004 N.Y. Laws ch. 738, § 36 (codified at N.Y. Penal Law § 70.70).  Though the 2004 DLRA allowed defendants convicted of class A-I felonies to seek resentencing, it did not permit defendants convicted of class B or C felonies to do the same.  *Id.* § 41(d-1).

In 2009, however, New York passed the 2009 Drug Law Reform Act (the "2009 DLRA"), allowing individuals convicted of class B felonies the opportunity to obtain resentencing under the lowered maximum sentences.  2009 N.Y. Laws ch. 56, parts AAA § 9 (codified at N.Y. Crim. Proc. § 440.46).  In order to qualify for resentencing, a defendant must be "serving an indeterminate sentence with a maximum term of more than three years."  *Id.*  The 2009 DLRA also provides that defendants convicted simultaneously of a class B and C felony may apply for

5

resentencing for both felonies. *Id.* There is no dispute that Cortes-Morales is ineligible for resentencing under these provisions because he is neither "serving an indeterminate sentence" in New York nor sentenced to a "maximum term of more than three years."

### C. Cortes-Morales's First § 2241 Petition

In October 2010, Cortes-Morales filed a § 2241 habeas petition *pro se* in the Southern District of Georgia (where he is incarcerated). His principal argument was that his 1990 class C felony no longer qualified as an ACCA predicate conviction because it was merely for an attempted sale. The district court erroneously concluded that this Court's decision in *Gilbert v. United States*, 640 F.3d 1293 (11th Cir. 2011), foreclosed relief for prisoners seeking habeas review of sentencing defects. In March 2012, after Cortes-Morales moved for reconsideration, the court recognized its error and granted reconsideration, but nonetheless denied the petition, concluding that Cortes-Morales's class C felony properly qualified as an ACCA predicate conviction.

Cortes-Morales moved a second time for reconsideration. This time, he argued that because several New York courts had permitted resentencing pursuant to the 2009 DLRA and because he was eligible for such resentencing, he no longer had the necessary predicates for the ACCA enhancement. Specifically, Cortes-Morales argued:

6

> [C]ritical to the disposition of the pending habeas petition [are] three decisions from New York Court's identifying the groups of defendants that are eligible for sentence reductions under New York Drug Resentencing Law of 2009. Suffice it to say, Morales falls within the exception noted by the Government as the state lowered the maximum penalty applicable to the offense and made that reduction applicable to defendants' previously convicted and sentenced for that offense. Morales is so [situated].

Motion for Reconsideration at 2–3, *Cortes-Morales v. Haynes*, No. 2:10-cv-159-LGW-JEG (S.D. Ga. Mar. 22, 2012), ECF No. 28. The district court, hearing this argument for the first time, held:

> Cortes-Morales argues that recent decisions by the State of New York render his previous convictions under New York law improper predicate offenses under the Armed Career Criminal Act. Cortes-Morales was sentenced under federal law, not New York law. These recent decisions arising out of New York, which provide relief under New York laws, would not provide him with his requested relief in his 28 U.S.C. § 2241 petition. Cortes-Morales should petition the State of New York for a determination of whether his previous convictions under State law still qualify as felony convictions. Should Cortes-Morales be entitled to his relief in State court, he could then petition the District of Puerto Rico, the federal court in which he was sentenced, for permission to file a second or successive motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

*Cortes-Morales v. Haynes*, No. 2:10-cv-159-LGW-JEG, slip op. at 1–2 (S.D. Ga. June 29, 2010).

7

Following the district court's instructions, Cortes-Morales sought resentencing in New York court. That court concluded that he was ineligible for resentencing because (1) he was not incarcerated in New York at the time of his motion, (2) he was not convicted of a class B felony offense,[1] and (3) his maximum sentence was not longer than three years.

### D.  Proceedings Below

Undeterred, Cortes-Morales filed a second § 2241 petition, arguing again that the 2004 DLRA and the 2009 DLRA reduced the maximum sentence for his drug convictions, and, consequently, his drug convictions were no longer "serious drug offenses" within the meaning of the ACCA. After Cortes-Morales's first petition, the Supreme Court clarified that for purposes of the ACCA, a federal sentencing court must "consult the maximum sentence applicable to a defendant's previous drug offense at the time of his conviction for that offense." *McNeill v. United States*, 563 U.S. 816, 131 S. Ct. 2218, 2221–22 (2011). However, the Court did not consider "a situation in which a State subsequently lowers the maximum penalty applicable to an offense and makes that reduction available to defendants previously convicted and sentenced for that offense." *Id.* at 2224 n.1.

---

[1] It is unclear whether this was a proper basis for denying Cortes-Morales relief, as he was convicted of a class B felony, and the 2009 DLRA makes clear that individuals convicted simultaneously of class B and C felonies are eligible for resentencing. In any event, there is no dispute Cortes-Morales was otherwise ineligible for resentencing.

8

Accordingly, Cortes-Morales can succeed on the merits of his claim only if the New York sentencing reductions apply retroactively.

But the district court, adopting the magistrate's recommendation, did not reach the merits of Cortes-Morales's claim, holding that it lacked jurisdiction to consider his claim because Cortes-Morales had failed to meet the Savings Clause test articulated by this Court in *Bryant v. Warden, FCC Coleman-Medium*, 738 F.3d 1253 (11th Cir. 2013).  On appeal, Cortes-Morales, ably assisted by assigned counsel, argues that the 2009 DLRA's generally retroactive effect entitled him to relief under the Savings Clause, even though he is not eligible for resentencing in New York.

## II. STANDARD OF REVIEW

Whether a prisoner may bring a § 2241 petition under the Savings Clause of § 2255 is a question of law reviewed *de novo* by this Court.  *Bryant*, 738 F.3d at 1262.

## III. DISCUSSION

### A.  Savings Clause

An individual incarcerated for a federal crime may ordinarily collaterally challenge the validity of his or her conviction or sentence only by filing a habeas corpus petition pursuant to 28 U.S.C. § 2255.  By contrast, petitions under the more general provisions of § 2241 may typically be used only to challenge the

9

execution, as opposed to the validity, of a sentence. *See Antonelli v. Warden, U.S.P. Atlanta*, 542 F.3d 1348, 1352 n.1 (11th Cir. 2008) (citing 28 U.S.C. § 2255(e)).  Once an initial habeas petition under § 2255 has been filed and denied, the grounds for filing a second or successive motion are narrow.  In that event, a prisoner must show either that (1) there is newly discovered evidence showing actual innocence, or (2) the Supreme Court has announced a new retroactive rule of constitutional law that was previously unavailable to the petitioner.  28 U.S.C. § 2255(h).

This Court, however, has recognized that a prisoner may file a petition under § 2241 challenging the *validity* of his conviction or sentence if his § 2255 motion was "inadequate or ineffective" to test the validity of his conviction or sentence. *See Bryant*, 738 F.3d at 1263.  This conclusion stems from the so-called "Savings Clause" of § 2255, which provides:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

28 U.S.C. § 2255(e).

We have formulated a test for determining inadequacy or ineffectiveness where a petitioner claims he was sentenced above the statutory maximum.  In

10

*Bryant*, we held that in such circumstances, a prisoner may file a § 2241 petition challenging the validity of his sentence only if (1) during the pendency of the § 2255 petition, circuit precedent squarely foreclosed the argument being made in the § 2241 petition, (2) subsequent to the § 2255 petition, the Supreme Court overturned that circuit precedent, (3) the new Supreme Court rule applies retroactively on collateral review, (4) the effect of the retroactive rule is that the prisoner has been sentenced above the statutory maximum authorized by Congress, and (5) the Savings Clause reaches the kind of claim raised by the petitioner. 738 F.3d at 1274. The chief benefit of the Savings Clause is that, contrary to § 2255(h)'s narrow grounds for filing a successive petition, a retroactive change in Supreme Court law that is not of a constitutional dimension can nonetheless provide relief to a prisoner. But the Savings Clause is a threshold jurisdictional inquiry—if a petitioner cannot satisfy the Savings Clause test, we lack jurisdiction to hear a § 2241 petition challenging the validity of a conviction or sentence. *See McCarthan v. Warden, FCI Estill*, 811 F.3d 1237, 1250 (11th Cir. 2016).

Cortes-Morales concedes that he cannot meet this test—there is no retroactive Supreme Court case on point. He urges us, however, to adopt an expanded view of the Savings Clause, permitting its invocation where a retroactive change in state law renders a conviction or sentence invalid.

### B.  Cortes-Morales Cannot Meet the Savings Clause

For purposes of this appeal, we assume, without deciding, that Cortes-Morales is right that the Savings Clause may reach a claim that a retroactive change in New York's sentencing laws invalidated his sentence.  Even under Cortes-Morales's proposed view of the Savings Clause, however, his petition fails.

There is no dispute that Cortes-Morales is not eligible for resentencing under the 2009 DLRA.  The New York court offered three reasons for denying Cortes-Morales's motion to be resentenced, none of which he has challenged in this appeal.[2]  The 2004 DLRA and 2009 DLRA are thus not retroactive as to Cortes-Morales, and cannot serve as the basis for invoking the Savings Clause.

Cortes-Morales directs us to two district court opinions from the Southern District of New York holding that a defendant may be ineligible for the ACCA sentencing enhancement by virtue of the 2009 DLRA, even if he is ineligible for resentencing under the 2009 DLRA, because a strict reading of the 2009 DLRA violates the spirit and remedial purpose of the law.  *See United States v. Calix*, No. 13-cr-582, 2014 WL 2084098 (S.D.N.Y. May 13, 2014); *United States v. Jackson*, No. 13-cr-142, 2013 WL 4744828 (S.D.N.Y. Sept. 4, 2013).  These decisions do not persuade us to grant Cortes-Morales relief.  We need not guess at the

---

[2] The Government argues that Cortes-Morales is ineligible for resentencing for a number of other reasons as well.  Because there is no dispute that Cortes-Morales does not qualify for resentencing under the 2009 DLRA, we need not consider those arguments.

12

legislature's intent in affording only a subset of drug offenders an opportunity to be resentenced. The Supreme Court has instructed that "Congress chose [in the ACCA] to defer to the state lawmaker's judgment," *United States v. Rodriquez*, 553 U.S. 377, 388 (2008), and such deference is appropriate where, as here, the state legislature has made a clear, reasoned judgment about which offenders are most in need of relief—Cortes-Morales does not fall within that class of offenders. And even were we persuaded to consider the statute's purpose, the New York Court of Appeals has already recognized that because "[b]y the plain text of the statute, its benefits were limited to those 'in the custody of the department of correctional services,'" it follows that "the Legislature recognized that the burden of 'inordinately harsh punishment' falls most heavily on those who are in prison." *People v. Paulin*, 952 N.E.2d 1028, 1032 (N.Y. 2011). We therefore defer to the New York legislature's judgment that Cortes-Morales, as a person not in the custody of New York's department of correctional services, is not among the class of defendants the 2009 DLRA is designed to benefit.

Nor is Cortes-Morales benefitted by his invocation of Supreme Court precedent instructing courts to employ a categorical approach when determining enhancements under the ACCA. *See Taylor v. United States*, 495 U.S. 575, 602 (1990). The Supreme Court in *Taylor* did not suggest that courts must ignore the particular circumstances of the defendant, but rather held only that courts are

13

limited to the "fact of conviction and the statutory definition of the prior offense" when determining whether a prior conviction mandates a sentencing enhancement. *Id.* Indeed, the Court later made clear that some aspects of the particular defendant's conduct are relevant, holding that courts must take into account whether a state's recidivist statute imposed a higher sentencing maximum for the defendant in question. *Rodriquez*, 553 U.S. at 382–83. Our holding is not inconsistent with these Supreme Court's opinions, rendered in a different context, concerning how prior convictions are viewed for purposes of the ACCA.

Because Cortes-Morales is not eligible for resentencing under the 2009 DLRA, he cannot satisfy even his view of the Savings Clause. We thus lack jurisdiction and may not reach the merits of his claim.

## IV. CONCLUSION

We **AFFIRM** the judgment of the district court dismissing the petition.

14

WILLIAM PRYOR, Circuit Judge, concurring:

I join the majority opinion in full. Even assuming that the savings clause—as "interpreted" by this Court in *Bryant v. Warden, FCC Coleman-Medium*, 738 F.3d 1253 (11th Cir. 2013)—reaches retroactive amendments to state legislation, the Drug Law Reform Act of 2009 is not retroactive for prisoners like Cortes-Morales.

I write separately to reiterate that the five-part test we cooked up in *Bryant* is "indefensible as a matter of textual interpretation." *Samak v. Warden, FCC Coleman-Medium*, 766 F.3d 1271, 1276 (11th Cir. 2014) (W. Pryor, J., concurring). Because *Bryant* is a monster of our creation, untethered to the text, I see no principled basis for determining its ultimate reach. If "circuit-busting precedent" opens the door to untimely, successive attacks on a prisoner's sentence, *see Bryant*, 738 F.3d at 1276, then why not retroactive amendments to state legislation? Until *Bryant* is overruled, we will continue to grapple in the dark to answer these types of questions. The en banc Court should overrule *Bryant* sooner rather than later.

15