WILLIAM PRYOR, Circuit Judge:
This appeal requires us to decide whether a change in caselaw entitles a federal prisoner tu an additional round of collateral review of his sentence. Congress gives a federal prisoner like Dan MeCarthan one opportunity to move to vacate his sentence unless that remedy is “inadequate or ineffective to test the legality of his detention.” 28 U.S.C. § 2255(e). When McCarthan pleaded guilty to being a felon in possession of a firearm, 18 U.S.C. § 922(g), he understood that the district court would enhance his sentence under the Armed Career Criminal Act, id. § 924(e). He did not appeal that sentence. When MeCar-than later moved to vacate his sentence, he again said nothing about the enhancement. After foregoing those opportunities to complain about the enhancement of his sentence, MeCarthan petitioned for a writ of habeas corpus. MeCarthan argues that his earlier motion to vacate was inadequate to test his objection to his sentence enhancement because our caselaw about the Armed Career Criminal Act has changed. But because the motion to vacate gave MeCarthan an opportunity to challenge his sentence enhancement, his remedy was not inadequate or ineffective to test the legality of his sentence, regardless of any later change in caselaw.
For eighteen years, our Court has maintained that a change in caselaw may trigger an additional round of collateral re *1080 view, see Wofford v. Scott, 177 F.3d 1236 (11th Cir. 1999), but our precedents have ignored the text of the statute. As we struggled to apply our precedents, we employed a five-factor test and granted relief only twice. See Mackey v. Warden, FCC Coleman-Medium, 739 F.3d 657 (11th Cir. 2014); Bryant v. Warden, FCC Coleman-Medium, 738 F.3d 1253 (11th Cir. 2013). Because our precedents have failed to adhere to the text of section 2255(e), have not incurred significant reliance interests, and have proved unworkable, today we overrule them. We join the Tenth Circuit in applying the law as Congress wrote it, see Prost v. Anderson, 636 F.3d 578 (10th Cir. 2011) (Gorsuch, J.), and hold that a change in caselaw does not make a motion to vacate a prisoner’s sentence “inadequate or ineffective to test the legality of his detention,” 28 U.S.C. § 2255(e). We affirm the dismissal of McCarthan’s petition for a writ of habeas corpus.
I. BACKGROUND
In 2003, Dan McCarthan pleaded guilty to being a felon in possession of a firearm, 18 U.S.C. § 922(g), the maximum sentence for which is ten years imprisonment, id. § 924(a)(2). The district court enhanced McCarthan’s sentence under the Armed Career Criminal Act, id. § 924(e), on the ground that he had five prior convictions for a “serious drug offense” or a “violent felony,” id. § 924(e)(1), including one for escape. United States v. McCarthan, No. 8:02-cr-137 (M.D. Fla. June 4, 2003). McCarthan received a sentence of 211 months. Id. He did not appeal. Id.
McCarthan later moved to vacate his sentence, 28 U.S.C. § 2255. He alleged that he had received ineffective assistance of counsel, but he did not challenge the enhancement of his sentence. The district court denied the motion to vacate on the merits. McCarthan v. United States, No. 8:04-cv-1288 (M.D. Fla. Sept. 30, 2004). Both the district court and this Court denied his request for a certificate of appealability. See id.
In 2009, the Supreme Court ruled that some forms of the crime of escape do not qualify as a “violent felony” under the Armed Career Criminal Act. Chambers v. United States, 555 U.S. 122, 130, 129 S.Ct. 687, 172 L.Ed.2d 484 (2009). Chambers overturned our circuit precedent, United States v. Gay, 251 F.3d 950 (11th Cir. 2001), that even “walkaway” escape qualified as a violent felony. Id. at 954-55. Because Chambers involved statutory interpretation, McCarthan could not bring a second motion to vacate under section 2255(h). Instead, he filed a petition for a writ of habeas corpus, 28 U.S.C. § 2241. Both the district court and the panel applied a test we first enunciated in Wofford that would allow a federal prisoner to petition for a writ of habeas corpus if a later decision of the Supreme Court abrogates circuit precedent that had foreclosed the prisoner’s argument when he first moved to vacate his sentence.
The district court could have exercised jurisdiction over McCarthan’s petition only if it fell within the saving clause of section 2255(e). McCarthan argued that Chambers “ma[de] [him] actually innocent” of the sentencing enhancement and made him eligible for relief under the saving clause. The district court dismissed the petition because McCarthan’s other convictions ensured that his sentence did not exceed the statutory maximum. McCarthan v. Warden, FCC Coleman-Medium, 5:09-cv-110 (M.D. Fla. Jan. 11, 2012).
We affirmed the dismissal of McCarthan’s petition. McCarthan v. Warden, FCI Estill, 811 F.3d 1237, 1242 (11th Cir. 2016), reh’g en banc granted, op. vacated, No. 12-14989, 2016 WL 3878151 (11th Cir. May 24, 2016). The panel opinion explained *1081 that McCarthan’s petition did not satisfy the requirements of the Wofford test because he had at least three other convictions that triggered his enhanced sentence. Id. at 1256-57. But the panel disagreed about how to apply the Wofford test. Compare id. at 1246-47, with id. at 1257-59 (Proctor, J., concurring).
McCarthan filed a petition for rehearing en banc, and we granted it. We instructed the parties to brief three issues: (1) do our precedents erroneously interpret the saving clause, 28 U.S.C. § 2255(e); (2) what is the correct interpretation of the saving clause; and (3) applying the correct standard, is McCarthan entitled to petition for a writ of habeas corpus? Because both McCarthan and the Warden argued that the Wofford test or some version of it is correct, we appointed .Taylor Meehan as amicus curiae to argue that our precedents erroneously interpreted the saving clause. We thank Ms. Meehan for her superb brief and oral argument in keeping with the highest tradition of the legal profession.
On October 17, 2016, we granted McCar-than’s unopposed motion to substitute the Director of Goodwill Industries-Suncoast, Inc. as the Respondent-Appellee. McCarthan was transferred from FCI Estill to the custody of the Director of Goodwill Industries-Suncoast, Inc., a Bureau of Prisons Residential Reentry Center (more commonly known as a halfway house). McCarthan is still “in custody,” for purposes of our jurisdiction. 28 U.S.C. § 2255(a).
II. STANDARD OF REVIEW
Whether a prisoner may bring a petition for a writ of habeas corpus under the saving clause of section 2255(e) is a question of law we review de novo. Williams v. Warden, Federal Bureau of Prisons, 713 F.3d 1332, 1337 (11th Cir. 2013). The petitioner bears the burden of establishing that the remedy by motion was “inadequate or ineffective to test the legality of his detention.” Turner v. Warden Coleman FCI (Medium), 709 F.3d 1328, 1333 (11th Cir. 2013) (quoting 28 U.S.C. § 2255(e)), abrogated on other grounds by Johnson v. United States, - U.S. -, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015).
III. DISCUSSION
Since 1948, Congress has required that a federal prisoner file a motion to vacate, 28 U.S.C. § 2255, instead of a petition for a writ of habeas corpus, id. § 2241, to collaterally attack the legality of his sentence. See Pub. L. No. 80-773, 62 Stat. 869, 967-68. A motion to vacate allows a prisoner to contest his sentence “upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.” 28 U.S.C. § 2255(a). Section 2255(e) makes clear that a motion to vacate is the exclusive mechanism for a federal prisoner to seek collateral relief unless he can satisfy the “saving clause” at the end of that subsection:
An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.
Id. § 2255(e) (emphasis added). “[S]aving[_, not savings,] is the precise word” for “a *1082 statutory provision exempting from coverage something that would otherwise be included,” Bryan A. Garner, Garner’s Dictionary of Legal Usage 797 (3d ed. 2011); it has nothing to do with saving a statute from unconstitutionality, see, e.g., 28 U.S.C. § 1333(1) (“saving to suitors in all cases all other remedies to which they are otherwise entitled”).
To determine whether a change in case-law can satisfy the saving clause of section 2255(e), we consider three matters. First, we explain how we (and other circuits) have interpreted the saving clause. Second, we explain why our precedents fail to adhere to the text of the saving clause. Third, in the light of the incongruity of the text and our precedents, we explain our decision to overrule our precedents.

A. Our Precedents About the Saving Clause

Congress enacted section 2255 to address the “serious administrative problems” caused by the requirement that ha-beas petitions be brought in the district of incarceration, often far from where relevant records and witnesses were located. United States v. Hayman, 342 U.S. 205, 210-19, 72 S.Ct. 263, 96 L.Ed. 232 (1952). The motion to vacate “afford[ed] the same rights in another and more convenient forum,” namely the district where the prisoner was sentenced. Id. at 219, 72 S.Ct. 263. In 1996, Congress reformed the system of collateral review when it passed the Antiterrorism and Effective Death Penalty Act. See Pub. L. No. 104-132, 110 Stat. 1214. The Act made several changes to section 2255, including the addition of a bar on second or successive motions, 28 U.S.C. § 2255(h), and a statute of limitations, id. § 2255(f). See 110 Stat. at 1220. But the Act did not alter the saving clause. See id.
This Circuit first considered the meaning of the saving clause eighteen years ago in Wofford. Charlie Wofford, a federal prisoner, pleaded guilty to being a felon in possession of a firearm and conspiracy to possess with intent to distribute cocaine. Wofford, 177 F.3d at 1237. The district court and this Court denied his first motion to vacate. Id. After several failed attempts to file successive motions to vacate, Wofford petitioned for a writ of habeas corpus under section 2241 and argued that his illegal sentence created manifest injustice. Id. at 1238. Wofford argued that because the bar on second and successive motions prevented the court from reaching the merits of his new claims, he satisfied the saving clause. Id.
We denied Wofford relief, but our analysis paid scant attention to the text of the saving clause. We began with the opinion of the Supreme Court in Hayman, but concluded that it was “not very helpful” with respect to the “saving[] clause language.” Id. at 1239. We then discussed the legislative history. Id. at 1239-41. Early versions of the saving clause focused on practicable problems, but we “found nothing in the legislative history explaining why the relevant language was changed or what the new language means.” Id. at 1241. Unsurprisingly, snippets from the legislative history cut both ways — that the new language did not make any substantive changes and. that the new language was broader than the old language — but we decided “the better view is that the saving[ ] clause is concerned with more than the practical difficulties.” Id. We then canvassed the decisions of our sister circuits. Id. at 1242-45. After we concluded that the approach of the Seventh Circuit was “better reasoned than those of the other circuits, and its rule has the advantage of being specific,” we applied a test that turned on an intervening change in circuit precedent. Id. at 1244. We stated *1083 that “the only sentencing claims that may conceivably be covered by the saving[] clause are those based upon a retroactively applicable Supreme Court decision overturning circuit precedent.” Id. at 1245. But because Wofford’s petition did not rest upon a change in caselaw, we denied him relief. Id.
In Gilbert, sitting en banc, we clarified that, under the Wofford test, the saving clause does not apply to errors that do not cause a sentence to exceed the statutory maximum. Gilbert v. United States, 640 F.3d 1293, 1323 (11th Cir. 2011) (en banc). Ezell Gilbert pleaded guilty to possession with intent to distribute of more than 50 grams of crack cocaine and more than 100 grams of marijuana. Id. at 1298. Under the then-mandatory sentencing guidelines, the district court applied the career offender enhancement and sentenced Gilbert to 292 months imprisonment. Id. at 1300. The statutory maximum was life imprisonment. Id. at 1299. Years after we denied relief in his direct appeal and denied him a certificate of appealability about the denial of his first motion to vacate, Gilbert invoked the saving clause and petitioned for a writ of habeas corpus. He argued that the district court should not have applied the career offender guideline. Id. at 1301-02. On rehearing en banc, we explained that the Wofford test was “only dicta” but, in any event, could not help Gilbert. Id. at 1319-20. Because Gilbert challenged only the use of the guidelines in determining his sentence and a prisoner cannot be actually innocent of a sentence within the statutory range, Wofford did not apply. Id. at 1320 (“Gilbert’s position turns on treating sentences as convictions, and an argument that depends on calling a duck a donkey is not much of an argument.”). Because Gilbert’s sentence did not exceed the statutory maximum, we denied relief. Id. at 1322-24.
A few years later, Williams revisited the Wofford test to address an alleged error that caused the sentence to exceed the statutory maximum. Williams, 713 F.3d at 1334. Albert Williams was tried and convicted of being a felon in possession of a firearm and was sentenced as a career offender under the Armed Career Criminal Act. Id. at 1335. Williams did not object to the enhancement during sentencing or on direct appeal, and we affirmed his conviction. Id. After Williams filed several meritless collateral attacks, the Supreme Court decided Begay v. United States, 553 U.S. 137, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008), which narrowed the definition of “violent felony” in the Armed Career Criminal Act. Id. at 148, 128 S.Ct. 1581. Williams argued that under section 2255(e) the district court could hear his petition for a writ of habeas corpus and decide his claim that his sentence now exceeded the statutory maximum because some of his underlying convictions no longer qualified as violent felonies. Williams, 713 F.3d at 1336. We reiterated that “the statute says precious little about what it means for the original motion to have been ‘inadequate’ or ‘ineffective.’ ” Id. at 1341. Applying the Wofford test, we determined that circuit precedent would not have “squarely resolved” Williams’s claim unless there was “adverse precedent ... that would have made us unwilling to listen.” Id. at 1343, 1347. But there was “no Circuit precedent on the books during Williams’s collateral attack” that foreclosed his claim, so we denied him relief. Id. at 1345, 1349.
In Bryant, we again applied the Wofford test and granted a prisoner relief under the saving clause for the first time. Bryant, 738 F.3d at 1274. We distilled a five-part test from our precedents. That is, a federal prisoner may file a petition for a writ of habeas corpus if (1) binding precedent foreclosed a claim at the time of his *1084 first motion to vacate; (2) the Supreme Court overturned our binding precedent that foreclosed the claim; (3) the new decision of the Supreme Court applies retroactively on collateral review; (4) as a result of this retroactive decision, the prisoner’s sentence is now contrary to the law; and (5) this kind of claim can be brought under the saving clause. Id. Bryant pleaded guilty to being a felon in possession of a firearm. Id. at 1258. He had three prior felony convictions, including one for carrying a concealed firearm, and the district court imposed a sentencing enhancement under the Armed Career Criminal Act. Id. at 1258-60. Bryant’s first motion to vacate did not challenge his conviction for carrying a concealed firearm. Id. at 1260. After Begay, the district court denied leave to file a successive motion, and Bryant instead petitioned for a writ of habeas corpus. Id.
Bryant satisfied each part of the Wof-ford test. Our precedent in United States v. Hall, 77 F.3d 398 (11th Cir. 1996), held that a concealed-firearm offense was a violent felony, id. at 401-02, which foreclosed Bryant’s argument when he filed his first motion to vacate. Bryant, 738 F.3d at 1274. The later decision of the Supreme Court in Begay “busted” that precedent. Id. at 1275. And we held that Begay announced a substantive new rule that applied retroactively. Id. at 1276-77. Bryant’s sentence was 235 months imprisonment, which exceeded the ten year statutory maximum for his crime without the enhancement. Id. at 1279. And we held that the saving clause reaches more than claims of actual innocence; it extends also to errors that cause a sentence to exceed the statutory maximum. Id. at 1281-84.
In a similar appeal, we also granted Brian Mackey relief. Mackey, 739 F.3d at 663. He argued that as a result of Begay, his convictions for carrying a concealed firearm no longer supported his sentence as an armed career criminal. Id. at 660. Under the Wofford test as explicated in Bryant, we again granted relief. Id. at 658, 663.
Since then, additional wrinkles have arisen. In Samak, a federal inmate imprisoned in our Circuit, but sentenced in another, the Fifth, petitioned for a writ of habeas corpus. Samak v. Warden, FCC Coleman-Medium, 766 F.3d 1271, 1275 n.3 (11th Cir. 2014). The Wofford test required us to review Fifth Circuit precedent and determine whether the law of that other circuit foreclosed Jamal Samak’s petition. Id. at 1275. We denied relief because the relevant Fifth Circuit precedent actually supported Samak’s claim at the time of his first motion to vacate. Id. But a separate concurring opinion called for a reconsideration of our precedent in Bryant and the adoption of an interpretation rooted in the plain text of the saving clause. Id. at 1275-76 (W. Pryor, J., concurring). And in Cortes-Morales, a federal prisoner argued that the saving clause should extend beyond changes in caselaw to retroactive legislation that amended the New York sentencing statutes. Cortes-Morales v. Hastings, 827 F.3d 1009, 1015 (11th Cir. 2016). We held that Jorge Cortes-Morales was not eligible for resentencing under the revised New York laws and avoided the question whether or not the saving clause could be extended to retroactive amendments to state legislation. Id. at 1016. But a separate concurring opinion reiterated that because Bryant is a “monster of our creation, untethered to the text” there is “no principled basis for determining its ultimate reach.” Id. (W. Pryor, J., concurring).
Several other circuits have divined similarly atextual tests for satisfying the saving clause. In Davenport, which we cited in *1085 Wofford, the Seventh Circuit engaged in a pragmatic analysis that adequate “should mean” that “a prisoner [has] a reasonable opportunity to obtain a rehable judicial determination of the fundamental legality of his conviction and sentence.” In re Davenport, 147 F.3d 605, 609 (7th Cir. 1998). And the Fourth, Fifth, and Sixth Circuits have required proof of actual innocence of a charged offense, in addition to other factors, to obtain relief under the saving clause. See, e.g., Wooten v. Cauley, 677 F.3d 303, 307-08 (6th Cir. 2012); Reyes-Requena v. United States, 243 F.3d 893, 904 (5th Cir. 2001); In re Jones, 226 F.3d 328, 333-34 (4th Cir. 2000). The Second Circuit holds that “inadequate or ineffective” means “the set of cases in which the petitioner cannot, for whatever reason, utilize § 2255, and in which the failure to allow for collateral review would raise serious constitutional questions.” Triestman v. United States, 124 F.3d 361, 377 (2d Cir. 1997). The Third Circuit focuses on when the second or successive limitations would cause a “complete miscarriage of justice.” In re Dorsainvil, 119 F.3d 245, 251 (3d Cir. 1997). And in the Eighth and Ninth Circuits, a prisoner must not have had an unobstructed procedural shot at presenting that claim, defined to include changes in law. See Harrison v. Ollison, 519 F.3d 952, 959-60 (9th Cir. 2008); Abdullah v. Hedrick, 392 F.3d 957, 963 (8th Cir. 2004). Judge Martin’s dissent places great weight on the majority of circuits having arrived at the same result, regardless of their reasoning, Martin Dissent at 1113-14, 1118 n.7, but our inquiry must begin with the text.
Only the Tenth Circuit has adhered to— or even seriously considered — the text of the saving clause. In Prost, the Tenth Circuit held that “the plain language of § 2255 means what it says and says what it means: a prisoner can proceed to § 2241 only if his initial § 2255 motion was itself inadequate or ineffective to the task of providing the petitioner with a chance to test his sentence or conviction.” Prost, 636 F.3d at 587. The intervening change in easelaw does not mean that the “process was ineffective or inadequate to test his argument.” Id. at 580. And then Chief Judge Frank Easterbrook reached the same conclusion contrary to the circuit precedent that binds his court: “A motion under § 2255 could reasonably be thought ‘inadequate or ineffective to test the legality of [the prisoner’s] detention’ if a class of argument were categorically excluded, but when an argument is permissible but fails on the merits there is no problem with the adequacy of § 2255.” Brown v. Caraway, 719 F.3d 583, 597 (7th Cir. 2013) (Easterbrook, C.J., concerning the circulation under Circuit Rule 40(e)).
In Bryant, we briefly considered this textual interpretation of the saving clause and dismissed it as “in tension with this Court’s precedent.” 738 F.3d at 1287. But as the Tenth Circuit correctly explained, our precedent in Wofford did not address the “textual and structural clues” that support the contrary reasoning in Prost, 636 F.3d at 593. With the benefit of our experience, we now take this opportunity to reconsider our interpretation of the saving clause.

B. The Text of the Saving Clause

The saving clause provides a federal prisoner relief only when his “remedy by motion is inadequate or ineffective to test the legality of his detention.” 28 U.S.C. § 2255(e). When we read this text, several terms offer important clues about its meaning: “remedy,” “to test,” “inadequate or ineffective,” and “detention.” Careful. review of these terms and the whole text makes clear that a change in easelaw does not trigger relief under the saving clause. Whether circuit precedent *1086 “was once adverse to a prisoner has nothing to do with whether his motion to vacate his sentence is ‘inadequate or ineffective to test the legality of his detention.’ ” Samak, 766 F.3d at 1276 (W. Pryor, J., concurring).
McCarthan’s claim that his sentence exceeds the statutory maximum is exactly the kind of claim that a motion to vacate is designed to “remedy,” notwithstanding adverse precedent. “Remedy” as used in the saving clause does not promise “relief.” A “remedy” is “[t]he means by which a right is enforced or the violation of a right is prevented, redressed, or compensated.” Remedy, Black’s Law Dictionary 1526 (3d ed. 1933). “Relief’ is “the assistance, redress, or benefit which a complainant seeks at the hands of the court.” Relief, Black’s Law Dictionary 1523 (3d ed. 1933). The “means” are not inadequate when circuit precedent forecloses relief on a claim. The remedy of a motion to vacate permitted MeCarthan to bring his claim and seek en banc or Supreme Court review to change the substantive rule of law. That a court might reject a prisoner’s argument does not render his “remedy by motion” an inadequate “means by which” to challenge the legality of his sentence. A procedural rule that might prevent success on a particular motion does not render the remedy an inadequate “means” so long as it is capable of “enforc[ing]” or “redressing]” the right. The motion to vacate is an adequate remedy for MeCarthan because if he succeeds, the court must “vacate and set the judgment aside” and either release or retry him. 28 U.S.C. § 2255(b).
The distinction between remedy and relief is reflected throughout our system of habeas corpus. For example, a procedural bar might prevent relief, but that bar does not render the motion itself an ineffective or inadequate remedy. See, e.g., Jiminian v. Nash, 245 F.3d 144, 147-48 (2d Cir. 2001) (Sotomayor, J.). The prisoner may still bring the claim. Likewise, a state prisoner must “exhaust[] the remedies available in the courts of the State” before petitioning for a federal writ of habeas corpus. 28 U.S.C. § 2254(b)(1)(A) (emphasis. added). In this context, remedy must refer to the available process — not substantive relief — because a prisoner who received relief in state court would have no reason to file a habeas petition. That McCarthan’s argument was foreclosed by precedent (as opposed to being wrong, untimely, procedurally barred, or unexhaust-ed) is irrelevant. The motion to vacate provided an adequate remedy to challenge the legality of his sentence.
MeCarthan also could have “tested” the legality of his detention in his first motion to vacate. That is, he could have made the argument that his prior convictions did not qualify him for an enhanced sentence under the statute. “To test” the legality of his detention and satisfy the saving clause, a prisoner is not required “to win” his release. “To test” means “to try.” Test, 11 Oxford English Dictionary 220 (1st ed. 1933). To try a claim, a “petitioner [must have] an opportunity to bring his argument,” Prost, 636 F.3d at 584. The opportunity to test or try a claim, however, neither guarantees any relief nor requires any particular probability of success; it guarantees access to a procedure. Id.; see also Taylor v. Gilkey, 314 F.3d 832, 835-36 (7th Cir. 2002) (“[To test] implies a focus on procedures rather than outcomes. Judges sometimes err, but this does not show that the procedures are inadequate; it shows only that people are fallible.”). To determine whether a prisoner satisfies the saving clause, we ask only whether the motion to vacate is an adequate procedure to test the prisoner’s claim. And to answer this question, we ask whether the prisoner *1087 would have been permitted to bring that claim in a motion to vacate. In other words, a prisoner has a meaningful opportunity to test his claim whenever section 2255 can provide him a remedy.
Despite circuit precedent, McCar-than could have tested the legality of his detention by requesting that we reconsider our precedent en banc or by petitioning the Supreme Court for a writ of certiorari. The panel opinion stated that the purpose of the Wofford test is “to prevent us from entertaining § 2241 petitions by federal prisoners who could have at least theoretically successfully challenged an ACCA enhancement in an earlier proceeding,” McCarthan, 811 F.3d at 1245, and Judge Rosenbaum’s dissent argues that “a prisoner must have a ‘meaningful opportunity’ to present his claim,” Rosenbaum Dissent at 1135-36. But if McCarthan had raised his claim earlier, perhaps he could have been the successful litigant that Deondery Chambers or Larry Begay later came to be. For example, Chambers raised the same claim McCarthan does, namely that his conviction for escape was not a violent felony under the Armed Career Criminal Act. Chambers, 555 U.S. at 123, 129 S.Ct. 687. And he too faced binding circuit precedent that foreclosed this claim. See United States v. Chambers, 473 F.3d 724, 725-26 (7th Cir. 2007), rev’d, 555 U.S. 122, 129 S.Ct. 687, 172 L.Ed.2d 484 (2009). But he nevertheless presented his claim and won relief in the Supreme Court. Chambers, 555 U.S. at 126-27, 129 S.Ct. 687. Similar ly, in the context of procedural default, we do not excuse a defendant’s failure to raise a claim even if the claim was “unacceptable to that particular court at that particular time.” Engle v. Isaac, 456 U.S. 107, 132 n.35, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) (citation omitted); Moore v. Zant, 885 F.2d 1497, 1507-08 (11th Cir. 1989) (‘Engle ... indicated that petitioners might have a duty to anticipate changes in the law at the threat of having later claims based on those changes barred by principles of procedural default.”). It is unclear why the chance to have precedent overruled en banc or by the Supreme Court would not qualify as a theoretically successful challenge or meaningful opportunity. McCarthan, like Chambers, had a meaningful opportunity to present his claim and test the legality of his sentence before the court of appeals and before the Supreme Court. A test often failed can nevertheless be an adequate test.
Adverse circuit precedent also did not make McCarthan’s first motion to vacate his sentence “inadequate or ineffective” to challenge his sentence. “Inadequate or ineffective” instead connotes that the saving clause permits a prisoner to bring a claim in a petition for habeas corpus that could not have been raised in his initial motion to vacate. The term “inadequate,” as defined in the phrase “inadequate remedy at law,” means “unfitted or not adapted to the end in view.” Inadequate Remedy at Law, Black’s Law Dictionary 940 (3d ed. 1933); see also Jordan Concurring at 1105 (providing a definition of “inadequate” as “lacking in effectiveness”). And “ineffective” means “[o]f such a nature as not to produce ... the intended [ ] effect.” Ineffective, 5 Oxford English Dictionary 239 (1st ed. 1933). That a particular argument is doomed under circuit precedent says nothing about the nature of the motion to vacate. The motion to vacate is still “adapted to the end”.of testing the claim regardless of the claim’s success on the merits.
The word “or” in “inadequate or ineffective” does not overpower the ordinary meaning of the words, which have similar definitions. We are hard pressed to imagine a remedy that is “lacking in effectiveness” but not “ineffective,” or “of such a nature as not to produce the intended ef- *1088 feet” but not “inadequate.” Although the disjunctive “or” may suggest separate meanings for the two terms, Jordan Concurring at 1104-05; Rosenbaum Dissent at 1130, it does not require mutual exclusivity. The word “or” commonly introduces a synonym or “definitional equivalent.” See Antonin Scalia & Bryan A. Garner, Reading Law: An Interpretation of Legal Texts 122 (2012). That construction may be an example of the “ill-conceived but lamentably common belt-and-suspenders approach” to legal writing, id. at 176-77, but it is the better reading of the text when the terms share the same ordinary meaning. Judge Rosenbaum’s dissent disagrees because the phrase “or ineffective” is not set off by commas, Rosenbaum Dissent at 1130, but commas are not necessary. See, e.g., Scalia & Garner, supra, at 122 (“The award of exemplary or punitive damages is the exception, not the rule.”); Fed. R. Evid. 407 (“When measures are taken that would have made an earlier injury or harm less likely to occur ... ”). That the definitions overlap does not require that we ignore the ordinary meaning of the text, and it does not support the dissent’s conclusion that “ineffective” must mean “constitutionally deficient.” Rosenbaum Dissent at 1130-31.
A motion to vacate is not often an inadequate or ineffective remedy. But a motion to vacate could be “inadequate or ineffective to test” a prisoner’s claim about the execution of his sentence because that claim is not cognizable under section 2255(a). See, e.g., Hajduk v. United States, 764 F.2d 795, 796 (11th Cir. 1985). The motion to vacate is “of such a nature” that it will “not ... produce ... the intended [] effect,” Ineffective, 5 Oxford English Dictionary 239 (1st ed. 1933), because the prisoner does not challenge his sentence and the appropriate remedy is not vacatur. Or, if the sentencing court no longer exists, the remedy by motion could be “inadequate or ineffective to test” the prisoner’s claim because the motion may be brought only in that venue. But when a prisoner’s argument about the legality of his sentence conflicts with circuit precedent, a motion to vacate is neither inadequate nor ineffective to test his argument.
The word “ineffective” also carries this meaning elsewhere in the statute: a state prisoner may avoid the exhaustion requirements if “circumstances exist that render such process ineffective to protect the rights of the applicant.” 28 U.S.C. § 2254(b)(1)(B)(ii). The Supreme Court stated that this exception applies only if “there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient as to render futile any effort to obtain relief.” Duckworth v. Serrano, 454 U.S. 1, 3, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981) (emphasis added). Be cause there was no claim that the “post-conviction procedures [were] inadequate to adjudicate” the claim, the prisoner did not qualify for the exception. Id. at 4, 102 S.Ct. 18. So too here. The remedy by motion is not ineffective unless the procedure it provides is incapable of adjudicating the claim. We cannot “engraft[] an exception onto the habeas statute not envisioned by Congress [and] inconsistent with the clear mandate of the Act.” Id. at 5, 102 S.Ct. 18.
In other areas of the law, adequacy and effectiveness focus on process and do not require any likelihood of success on the merits. For example, a litigant with an “adequate” remedy at law cannot seek equitable relief, even if his legal claim has little chance of success. Samak, 766 F.3d at 1285 (W. Pryor, J., concurring). Similarly, in the context of the Sixth Amendment, defense counsel is not “ineffective” even if his arguments are “doomed.” Brown, 719 F.3d at 597 (Easterbrook, C.J., concerning the circulation under Circuit Rule 40(e)). *1089 Judge Rosenbaum’s dissent takes this analogy too far when it asserts that because the ineffective assistance of counsel creates a constitutional deficiency under the Sixth Amendment, the term “ineffective” means “constitutionally deficient.” Rosenbaum Dissent at 1132.
When circuit precedent forecloses a prisoner’s claim, “it may very well mean circuit law is inadequate or deficient. But that does not mean the § 2255 remedial vehicle is inadequate or ineffective to the task of testing the argument.” Prost, 636 F.3d at 590. A prisoner has an adequate procedure to raise any claim attacking his sentence, even if that claim is foreclosed by circuit precedent. Our precedent may later prove to be “right or wrong as a matter of substantive law, but the saving[ ] clause is satisfied so long as the petitioner had an opportunity to bring and test his claim.” Id. at 585. When a prisoner’s motion attacks his sentence based on a cognizable claim that can be brought in the correct venue, the remedy by motion is adequate and effective to test his claim.
The term “detention” in the saving clause carries a broader meaning than the term “sentence” that appears elsewhere in the statute. Section 2255(a) allows a prisoner to challenge only his “sentence.” 28 U.S.C. § 2255(a). But the saving clause preserves challenges to a prisoner’s “detention” that would otherwise go unremedied. Id. § 2255(e). When Congress uses “different language in similar sections,” we should give those words different meanings. See Iraola & CIA, S.A. v. Kimberly-Clark Corp., 232 F.3d 854, 859 (11th Cir. 2000); see also Scalia & Garner, supra, at 170. When Congress enacted section 2255, the word “detention” meant “[k]eeping in custody or confinement,” Detention, 3 Oxford English Dictionary 266 (1st ed. 1933), or “[t]he act of keeping back or withholding, either accidentally or by design, a person or thing,” Detention, Black’s Law Dictionary 569 (3d ed. 1933). Because someone can be “[kept] in custody” without a criminal sentence, or “with[eld]” contrary to the terms of the sentence, it is clear that the meaning of “detention” covers circumstances of confinement other than those attributable to the sentence.
When a prisoner attacks aspects of his detention in ways that do not challenge the validity of his sentence, then the saving clause may provide him access to a different remedy. For example, a prisoner may concede the validity of his sentence but raise claims about the execution of his sentence — that is, “about his good-time credits or the revocation of his parole, which involve the ‘act of keeping back or withholding’ the prisoner.” Samak, 766 F.3d at 1280 (W. Pryor, J., concurring).
This reading of the text comports with the traditional distinction between a motion to vacate and a petition for a writ of habeas corpus. A motion to vacate covers only challenges to the validity of a sentence, but the saving clause and a petition for a writ of habeas corpus cover challenges to the execution of a sentence. Cf. Antonelli v. Warden, U.S.P. Atlanta, 542 F.3d 1348, 1351 n.1 (11th Cir. 2008) (“It is well-settled that a § 2255 motion to vacate is a separate and distinct remedy from habeas corpus proper.... A prisoner in custody pursuant to a federal court judgment may proceed under § 2241 only when he raises claims outside the scope of § 2255(a), that is, claims concerning execution of his sentence.”) (internal citations omitted); United States v. Flores, 616 F.2d 840, 842 (5th Cir. 1980) (“[The prisoner’s] appropriate remedy is under § 2255, not 28 U.S.C. § 2241, since the alleged errors occurred at or prior to sentencing.”). Because Congress used “sentence” in one *1090 part of the statute and “detention” in another, we should interpret the statute to preserve the traditional distinction between those terms and the procedures by which they are challenged. ■
McCarthan’s petition does not fall within the text of the saving clause. Nothing in the text suggests that Congress gave special status to claims foreclosed, by binding circuit precedent, as opposed to claims that are procedurally defaulted or substantively wrong. See Samak, 766 F.3d at 1295 (W. Pryor, J., concurring) (“Bryant does not even attempt to offer a plausible interpretation of the text of the savingf ] clause.”). Neither McCarthan’s failure to bring this claim earlier nor his odds of success on the merits are relevant to the saving clause inquiry. Because McCarthan filed a traditional claim attacking his sentence that he could have brought in a motion to vacate, the remedy by motion is adequate and effective to test the legality of his detention.
The whole text of section 2255 confirms our reading of the saving clause. “[TJhere can be no justification for needlessly rendering provisions in conflict if they can be interpreted harmoniously.” Scalia & Garner, supra, at 180. Allowing a prisoner with a claim that is cognizable in a motion to vacate to access the saving clause nullifies the procedural hurdles of section 2255 and undermines the venue provisions.
If the saving clause “guaranteed multiple opportunities to test a conviction or sentence,” then the bar against second and successive motions under section 2255(h) would become a nullity. Prost, 686 F.3d at 585. Only prisoners who satisfy the exceptions of section 2255(h) may collaterally attack their sentences more than once. Section 2255(h) “speaks directly” to the question of “[h]ow often to rerun a search for error.” Taylor, 314 F.3d at 835. Judge Martin’s dissent argues that our interpretation “has made a rule” that “insulate[s] [our] mistakes from ... review,” Martin Dissent at 1119, but, as always, every error we make in affirming the denial of a motion to vacate is subject to review on petition for certiorari. And we did not make the rule that bars consideration of second or successive motions. Congress did. The legislative branch defined both the appropriate sentence for McCarthan’s crime and the rules for challenging the legality of that sentence. Congress recognized that courts would make mistakes, but provided for successive motions only in specific circumstances. The statute limits each prisoner to a “single collateral attack, unless the conditions of [2255(h) ] have been met.” Taylor, 314 F.3d at 835. McCarthan neither alleges that “newly discovered evidence” establishes his innocence nor that “a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable” warrants relief. 28 U.S.C. § 2255(h). He cannot bring a second collateral attack.
The saving clause does not create a third exception. “Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied.” TRW Inc. v. Andrews, 534 U.S. 19, 28, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001) (quoting Andrus v. Glover Constr. Co., 446 U.S. 608, 616-17, 100 S.Ct. 1905, 64 L.Ed.2d 548 (1980)). The specific language of section 2255(h), enacted nearly 50 years after the saving clause, limits the reach of the saving clause. See Gilbert, 640 F.3d at 1308 (“An ambiguous or general statutory provision enacted at an earlier time must yield to a specific and clear provision enacted at a later time.”). If Congress wanted an exception for all intervening changes in law, it could have said so. Elsewhere in the statute, Congress refers to any “right” that is new and retroac *1091 tively applicable. 28 U.S.C. § 2255(f)(3). But section 2255(h) speaks only to “a new rule of constitutional law.” Id. § 2255(h)(2). This material variation in terms suggests a variation in meaning. See Scalia & Garner, supra, at 170. Judge Martin’s dissent argues that Congress’s failure to repeal the saving clause permits courts to create a third exception for new rules of statutory interpretation that arise after a prisoner has used his first motion to vacate. Martin Dissent at 1117. But to read the bar on successive motions (or other procedural bars to relief) to trigger the saving clause makes the statute self-defeating. See, e.g., Brown, 719 F.3d at 599 (Easterbrook, C.J., concerning the circulation' under Circuit Rule 40(e)). And we are not persuaded that relying on equity to limit the third exception to claims of actual innocence, Jordan Concurring at 1105-08, does any less violence to the statutory text that creates only two exceptions. Congress did not create any exception to section 2255(h) for non-constitutional changes in law, so we may not craft one.
Section 2255 includes other procedural hurdles that the Wofford test fails to respect. For example, the Wofford test runs roughshod over the statute of limitations, 28 U.S.C. § 2255(f). A federal prisoner has one year to move to vacate his sentence under section 2255. But when a prisoner uses the saving clause to bring a claim that is cognizable in a motion to vacate, he bypasses his statute of limitations and gains limitless time to press claims that prisoners who meet the requirements of section 2255 do not receive.
The motion to vacate was intended to be a substitute remedy for the writ of habeas corpus, see Hill v. United States, 368 U.S. 424, 427, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962); Hayman, 342 U.S. at 219, 72 S.Ct. 263, but permitting federal prisoners to file habeas petitions based on an intervening change in statutory interpretation provides those prisoners with a superior remedy. Allowing a prisoner to use the saving clause to bring a statutory claim in a habe-as petition circumvents the bar on successive petitions. 28 U.S.C. § 2255(h). It does away with the one-year statute of limitations. Id. § 2255(f). It renders the process for obtaining permission to file a second or successive motion, id. § 2253(b), and that for obtaining a certificate of appealability, id. § 2253(c)(1), a nullity. A prisoner who brings a constitutional claim under section 2255(h), in contrast, must overcome these procedural hurdles. The Wofford test unravels this carefully tailored scheme. It makes no sense to allow a federal prisoner to evade the statutory framework by filing a petition for a writ of habeas corpus.
Several of the separate opinions raise a version of the argument that a previously adequate remedy may later become inadequate, but these temporal arguments fail in the light of the whole text. Judge Rosenbaum’s dissent states that “as a practical matter” a “right ... cannot be vindicated until after the Supreme Court announces the new rule.” Rosenbaum Dissent at 1154. But this argument ignores that litigants often make novel arguments in the hope that a court will adopt them as a matter of first impression or in a rejection of past precedent. Judge Martin’s dissent and Judge Jordan’s concurring opinion argue that the “present tense” of the saving clause requires that we ask whether section 2255 “is adequate or ineffective to test” “at the time the petition is filed in federal court.” Martin Dissent at 1115; Jordan Concurring at 1104 (We “assess inadequacy and ineffectiveness as of the time [a petitioner] files his § 2241 habeas corpus petition, and not as of the time when he submitted his initial § 2255 motion.”). But whether the remedy “is” inadequate or ineffective must refer to the nature of the remedy, not to one specific *1092 motion, or else the motion becomes inadequate every time a procedural rule like the statute of limitations or procedural default prevents success. The procedural bars mean nothing if they can be avoided through the saving clause. The saving clause does not allow access to section 2241 whenever a claim is untimely or procedurally defaulted otherwise the statute would render itself inadequate or ineffective. The same must be true for the bar on second or successive motions. Contrary to Judge Martin’s dissent, Martin Dissent at 1117-19, the means also do not somehow become inadequate- or ineffective when circuit precedent is abrogated after a prisoner has filed his first motion to vacate. When Congress limits a prisoner to a single motion to vacate, it does not render the “remedy by motion inadequate or ineffective to test the legality of his detention,” 28 U.S.C. § 2255(e); it instead limits each prisoner to one test.
Allowing a federal prisoner to bring a successive claim in a petition for a writ of habeas corpus also defies the logic of the venue provisions. A federal prisoner must file a motion to vacate in the court that tried and sentenced him, where he can challenge issues about his trial and sentencing. See id. § 2255(a). In contrast, he must bring a petition for a writ of habeas corpus in the district in which he is imprisoned, where he can challenge his detention. See id. § 2241(d). The United States Attorney who participated in sentencing defends challenges to the prisoner’s trial and sentencing. Id. § 2255(a). But the warden of the prison defends challenges to the prisoner’s detention. Id. § 2241(d).
Allowing a prisoner to bring an ordinary attack on his sentence in the district where he is detained eviscerates this structure. It resurrects the problems that section 2255 was enacted to solve, such as heavy burdens on courts located in districts with federal prisons, inconvenience for witnesses who must travel far from where the prisoner was tried to the place where he is detained, the requirement that wardens defend resentencing. See Hayman, 342 U.S. at 219, 213, 72 S.Ct. 263. It also creates new procedural and jurisdictional wrinkles for district courts tasked with implementing relief that the statute does not contemplate. See Hill v. Sepanek, Civil No. 14-85-ART, 2017 WL 73338, at *5-9 (E.D. Ky. Jan. 6, 2017) (Thapar, J.) (“[Practical problems ... arise under any construction of the saving! ] clause that does not comport with its plain meaning.”); Love v. Hogsten, Civil Action No. 1:09-cv-2134-JEC, 2012 WL 3822194, at *4 (N.D. Ga. Sept. 4, 2012) (J. Carnes, J.) (“Insisting that what is essentially a § 2255 claim ... be instead deemed a § 2241 claim [shifts] the venue ... from the district of sentencing to the district in which the petitioner is confined!,] ... meaning that there is the potential for multiple § 2241 saving! ] clause claims in multiple districts, creating confusion, duplicative effort, and potentially inconsistent results.”). Allowing access to the saving clause to bring ordinary sentencing challenges disregards Congress’s decision to bifurcate the system of collateral review between challenges to a prisoner’s sentence and challenges to the execution of a prisoner’s sentence. Limiting the saving clause to claims that are not cognizable or that cannot be remedied under section 2255 respects the entire system of federal collateral review.
The government and some of the separate opinions argue that our interpretation renders the saving clause meaningless, see Jordan Concurring at 1111; Martin Dissent at 1119, but we disagree. The saving clause has meaning because not all claims can be remedied by section 2255. A prisoner sentenced by a federal court, for example, may file a petition for a *1093 writ of habeas corpus to challenge the execution of his sentence, such as the deprivation of good-time credits or parole determinations. See, e.g., Hajduk, 764 F.2d at 796. The saving clause also allows a prisoner to bring a petition for a writ of habeas corpus when the sentencing court is unavailable. Other circuits have held that a prisoner may file a petition for a writ of habeas corpus if his sentencing court has been dissolved. See Prost, 636 F.3d at 588 (explaining that for military prisoners “the resort to § 2241 is the norm rather than the exception ... due to the evanescent nature of court martial proceedings: the sentencing court literally dissolves after sentencing and is no longer available to test a prisoner’s collateral attack”). Or, as our sister circuit has held, perhaps practical considerations (such as multiple sentencing courts) might prevent a petitioner from filing a motion to vacate. See Cohen v. United States, 593 F.2d 766, 771 & n.12 (6th Cir. 1979). “But only in those kinds of limited circumstances is [the remedy by motion] ‘inadequate or ineffective to test the legality of his detention.’ ” Samak, 766 F.3d at 1278 (W. Pryor, J., concurring) (quoting 28 U.S.C. § 2255(e)).
Judge Rosenbaum’s dissent and Judge Jordan’s concurring opinion argue that our interpretation conflicts with the text of the statute because, in their view, a prisoner can petition for a writ of habeas corpus to challenge the execution of his sentence without accessing the saving clause. Rosenbaum Dissent at 1124-29; Jordan Concurring at 1109. But they misinterpret “a prisoner who is authorized to apply for relief by motion pursuant to this section,” id. § 2255(e), to mean only a prisoner bringing a claim under section 2255(a). Rosenbaum Dissent at 1124-29; Jordan Concurring at 1108. The use of the broader word “detention” suggests that the saving clause applies to claims about the execution of a sentence because we would expect the clause to say “sentence” if it only applied to sentencing claims. And the phrase “a prisoner who” highlights that the prohibition on petitioning for a writ of habeas corpus applies to a kind of person, namely “a prisoner in custody under sentence of a court established by Act of Congress,” id. § 2255(a), not a kind of claim. The better interpretation of “pursuant to this section” is in opposition to prisoners authorized pursuant to a different section, such as “a person in custody pursuant to the judgment of a State court” in the neighboring Section of the code, id. § 2254(a).
Despite the dissent’s attempt to limit the meaning of “authorized” to portions of section 2255 that contain affirmative grants to the prisoner, as opposed to processing instructions to the court, Rosenbaum Dissent at 1124-27, the text will not bear this interpretation. The phrase “pursuant to this section” refers to all of section 2255, not the first subsection alone. An ordinary speaker of English would not understand a prisoner who lacks permission to file a second or successive motion to be any more “authorized to apply for relief’ than a prisoner with a claim outside of section 2255(a). But if that prisoner can instead petition for a writ of habeas corpus, then section 2255(h) becomes a nullity. Our interpretation that a prisoner is “authorized to apply for relief by motion pursuant to this section,” id. § 2255(e), if he is “in custody under sentence of a court established by Act of Congress,” id. § 2255(a), avoids this nullity. But most importantly, even if a prisoner with a claim based on the execution of his sentence could petition for a writ of habeas corpus without the saving clause, the saving clause would still apply to situations in which a federal sentencing court dissolves or access to the remedy by motion is impractical. The interpretation presented by Judge Rosen- *1094 baum’s dissent and Judge Jordan’s concurring opinion proves nothing about whether a prisoner with a claim based on a change in caselaw or a prisoner with a claim based on actual innocence satisfies the saving clause.
Judge Rosenbaum’s dissent contends that our interpretation of the saving clause violates the Suspension Clause, U.S. Const. Art. 1, § 9, cl. 2, Rosenbaum Dissent at 1132-34, but we disagree. We have no need to use the saving clause as a fount of constitutional avoidance in this appeal, see Rosenbaum Dissent at 1123, 1135-36, because there is no constitutional violation to avoid. The Suspension Clause provides that “[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it.” U.S. Const. Art. 1, § 9, cl. 2. Our interpretation of the saving clause cannot suspend the writ because the Original Writ in the Supreme Court remains available, habeas corpus at common law did not apply to prisoners sentenced by a court of competent jurisdiction, and the decision of the Supreme Court in Felker v. Turpin, 518 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996), upheld a bar on successive motions against constitutional challenge.
Nothing in the Antiterrorism and Effective Death Penalty Act “strangle^] the power of the Supreme Court to grant an Original Writ.” Samak, 766 F.3d at 1291 (W. Pryor, J., concurring) (citing Felker, 518 U.S. at 658, 116 S.Ct. 2333). “The Act cannot transgress the constitutional rights of prisoners who allege that they have been erroneously' sentenced or unfairly tried when the Supreme Court retains its power to grant an Original Writ. The Supreme Court affirmed this proposition as early as 1868 ... and as recently as 1996.” Id. at 1292 (citing Ex Parte Yerger, 75 U.S. (8 Wall.) 85, 105, 19 L.Ed. 332 (1868); Felker, 518 U.S. at 651, 116 S.Ct. 2333). Judge Rosenbaum’s dissent argues that the Original Writ is not an adequate substitute for the common law writ because it would be impractical and the Supreme Court rarely grants the writ. Rosenbaum Dissent at 1146-47. But “judgments about the proper scope of the writ are ‘normally for Congress to make.’ ” Felker, 518 U.S. at 664, 116 S.Ct. 2333 (citing Lonchar v. Thomas, 517 U.S. 314, 323, 116 S.Ct. 1293, 134 L.Ed.2d 440 (1996)). And because the Constitution does not even require Congress to create inferior courts, U.S. Const. Art. III, § 1, it makes no sense to assert that á remedy within the original jurisdiction of the Supreme Court is insufficient to satisfy the Suspension Clause.
To argue that section 2255 suspends the writ ignores that at common law, the writ of habeas corpus would not have been available at all to prisoners like McCarthan. And the Supreme Court has never held that the constitutional requirements of the Suspension Clause increase over time. See I.N.S. v. St. Gyr, 533 U.S. 289, 300-301, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); Felker, 518 U.S. at 663-64, 116 S.Ct. 2333. Traditional habeas corpus dealt with only “serious abuses of power by a government, say a king’s imprisonment of an individual without referring the matter to a court.” Lonchar, 517 U.S. at 322, 116 S.Ct. 1293. “As limited by the act of 1789, [the writ] did not extend to cases of imprisonment after conviction, under sentences of competent tribunals.... ” Ex Parte Yerger, 75 U.S. (8 Wall.) at 101. Judge Rosenbaum’s dissent relies heavily on Boumediene v. Bush, 553 U.S. 723, 128 S.Ct. 2229, 171 L.Ed.2d 41 (2008), but this reliance is misplaced. In Boumediene, the Supreme Court addressed the scope of habeas corpus for executive detainees “where no trial has been held” and distin *1095 guished decisions like Felker in which a prisoner sought relief from a judgment imposed in a “fair, adversary proceeding.” Id. at 732, 774, 782, 128 S.Ct. 2229. Because McCarthan would not have had the right to habeas corpus under the common law, his inability to file a second collateral attack after a change in caselaw cannot possibly constitute a suspension of the writ.
Judge Rosenbaum’s dissent argues that the Suspension Clause requires the availability of successive petitions for new rules of statutory interpretation, Rosenbaum Dissent at 1122-23, but as the decision of the Supreme Court in Felker reminds us, the writ has not been suspended whenever a prisoner cannot file a successive collateral attack. The Antiterrorism and Effective Death 'Penalty Act creates parallel procedures for federal and state prisoners: federal prisoners bring collateral attacks under section 2255, and state prisoners bring collateral attacks under section 2254. Both remedies include a nearly identical bar on successive attacks, 28 U.S.C. §§ 2244(b); 2255(h), but only the federal remedy includes a saving clause.. In Felker, the Supreme Court held that the bar on second or successive collateral attacks by state prisoners did not violate the Suspension Clause. 518 U.S. at 664, 116 S.Ct. 2333. Because the Supreme Court has approved limitations on successive petitions without a saving clause, those same limitations with a saving clause must be constitutional. Citing the separation of powers to limit the application of Felker to state prisoners, Rosenbaum Dissent at 1143-45, is “interpretive jiggery-pokery,” King v. Burwell, - U.S. -, 135 S.Ct. 2480, 2500, 192 L.Ed.2d 483 (2015) (Scalia, J., dissenting), that conveniently ignores the dissent’s own insistence that “limited government powers” also animate habeas corpus, Rosenbaum Dissent at 108.
 Contrary to Judge Rosenbaum’s dissent, retroactivity doctrine does not undermine this conclusion; indeed, it is unclear why retroactivity is even relevant. When the Supreme Court makes a right retroactively available on collateral review, it does not mean that a prisoner is constitutionally entitled to have a court review a violation of that right on the merits. See, e.g., Bousley v. United States, 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (“Though petitioner’s claim is [retroactive], there are nonetheless significant procedural hurdles to its consideration on the merits.”). Retroactivity means that a court is no longer barred from applying a new rule on collateral review, not that a court must create a vehicle for collateral review because there is a new rule. Procedural barriers like procedural default, id. the statute of limitations, or the bar on successive motions may prevent litigation about a violation of that new rule. That a procedural rule prevents litigating an error does not create a constitutional crisis, let alone a suspension of the writ. See, e.g., Felker, 518 U.S. at 664, 116 S.Ct. 2333 (“The added restrictions which the Act places on second habeas petitions ... do not amount to a ‘suspension’ of the writ.”). Our current, erroneous precedent is not dictated by constitutional avoidance concerns. If anything, we conform our precedent to the Constitution by rejecting an atextual judicial invention and faithfully interpreting the text of the statute.

C. Precedent and Stare Decisis

We recognize that overturning precedent is and should be a rare occurrence. Our Court follows the principles of stare decisis as described by the Supreme Court. See Glazner v. Glazner, 347 F.3d 1212, 1216 (11th Cir. 2003) (en banc). *1096 Courts “should not lightly overrule past decisions,” Moragne v. States Marine Lines, Inc., 398 U.S. 375, 403, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), because “[s]tability and predictability are essential factors in the proper operation of the rule of law,” Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981). Stare decisis is especially important when we construe statutes because “Congress remains free to alter what we have done.” John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 139, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008) (quoting Patterson v. McLean Credit Union, 491 U.S. 164, 172-73, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989)).
But stare decisis “is not an inexorable command.” Payne v. Tennessee, 501 U.S. 808, 828, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991); Bryan A. Garner, et al., The Law of Judicial Precedent 388 (2016) (“[S]tare decisis isn’t an ineluctable doctrine to be applied with procrustean rig- or.”). We may overrule precedent that is “plainly and palpably wrong” if overruling the precedent would not “result in more harm than continuing to follow the erroneous decision.” Garner, et al., supra, at 388. Our Court has held that “we must follow the Supreme Court’s instruction that stare decisis should be abandoned where, as here, ‘a prior judicial ruling should come to be seen so clearly as error that its enforcement was for that very reason doomed.’ ” Glazner, 347 F.3d at 1216 (quoting Planned Parenthood of Southeastern Pa. v. Casey, 505 U.S. 833, 854, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992)). If the statutory and doctrinal underpinnings have eroded and there has not been significant reliance on the precedent, it may be abandoned. Kimble v. Marvel Entm’t, LLC, - U.S. -, 135 S.Ct. 2401, 2410-11, 192 L.Ed.2d 463 (2015). The same is true if a decision has “proved unworkable.” Id.
In this instance, we take the rare step of overruling our precedents for three reasons. First, they are wholly divorced from the text. Second, reliance interests are minimal. And third, our precedents have proved unworkable. Continuing to follow these erroneous precedents would do more harm than good.
First, our precedents are not faithful to the text of the statute. As discussed above, the Wofford test is “plainly and palpably wrong.” See Garner, et al., supra, at 388. Even our colleagues writing separately agree that our precedents are wrong. Rosenbaum Dissent at 1121 (“I agree with the Majority that we incorrectly interpreted 28 U.S.C. § 2255(e) on at least five occasions.”); Martin Dissent at 1114 (“I have always believed that Wofford was wrong and that this Court’s rulings on saving!] clause cases that have since followed Wofford are wrong as well.”); Jordan Concurring at 1101 (“I agree with the majority’s ultimate conclusion that the ‘saving clause’ of § 2255(e) does not permit sentencing claims ... [b]ut my reading of the ‘saving clause’ is broader.”); Wilson Dissent at 1111 (agreeing with Judge Jordan’s textual analysis but extending it to a prisoner whose sentence exceeds the statutory maximum). We have previously decided to overturn our precedent when the statute is “clear and unambiguous,” Glazner, 347 F.3d at 1215, or the precedent is “inconsistent” with the text of the statute, United States v. Svete, 556 F.3d 1157, 1166 (11th Cir. 2009) (en banc). Our decisions in Wofford, Gilbert, Williams, and Bryant ignored the text. When we first addressed the saving clause, “we went straight to the legislative history of the clause to divine its meaning, but unsurprisingly could find no clues.” Samak, 766 F.3d at 1276 (W. Pryor, J., concurring). And as we applied this rule, we never returned to a careful consideration of the text. See Williams, 713 *1097 F.3d at 1341 (“[T]he statute says precious little about what it means for the original motion to have been ‘inadequate’ or ‘ineffective.’ ”); Gilbert, 640 F.3d at 1307 (“This is one of those times when it is easier to determine something that a provision does not mean.... ”). Because our precedents are so far removed from the text of the statute, there is less reason to defer to them.
Nor is there a settled consensus about the meaning of the saving clause. The Tenth Circuit adheres to the text, Prost, 636 F.3d at 584-87, but most of our sister circuits have focused on legislative purpose and avoided rigorous textual analysis. As a result, a wide variety of interpretations of the saving clause exists amongst the circuits. For example, the Fifth Circuit has refused to apply the saving clause to sentencing errors, In re Bradford, 660 F.3d 226, 230 (5th Cir. 2011), our Circuit has extended the saving clause only to sentencing errors that exceed the statutory maximum, Bryant, 738 F.3d at 1274, and the Seventh Circuit has extended the saving clause to all sentencing errors, including those under the then-mandatory sentencing guidelines, Brown, 719 F.3d at 587. Although several circuits have adopted some version of a “circuit busting” test, they do not agree on its contours. Some require actual innocence, see, e.g., Wooten, 677 F.3d at 307-08, others require “complete miscarriage of justice,” In re Dorsainvil, 119 F.3d at 251, and others focus on constitutional avoidance, Triestman, 124 F.3d at 376. And our dissenting colleagues propose new tests based on constitutional avoidance, Rosenbaum Dissent at 1121-22, or fundamental defect, Martin Dissent at 1116. This is not a situation where our precedents align with a uniform interpretation.
Second, reliance interests for our precedents are minimal. As a fundamental matter, rules about collateral review do not create significant reliance interests. In areas of law like property and contracts, reliance interests are particularly strong. Kimble, 135 S.Ct. at 2410. And of course, individuals rely on criminal law because it regulates primary conduct. But unlike rules of property, where court decisions are “retrospective and may affect titles purchased on the faith of their stability,” Garner, et al., supra, at 422 (quoting Minn. Mining Co. v. Nat’l Mining Co., 70 U.S. (3 Wall.) 332, 334, 18 L.Ed. 42 (1865)), the availability of collateral review does not prompt reliance. Whether a federal prisoner receives one round of collateral review or two does not impact his decision-making. He cannot rely on an unanticipated change in law. And if he intentionally withheld an argument for a second bite at the apple, he would not have preserved it.
Our current test is relatively recent and has rarely led to a grant of relief. Although we have been applying some version of the test for intervening changes in law since Wofford, we did not grant relief until Bryant. When we considered the matter en banc in Gilbert, we still referred to the Wofford test as “dicta.” 640 F.3d at 1319. And it has been used to grant relief only one other time, in Mackey. “[Governing decisions” are more easily overturned “if the precedent is particularly recent and has not generated any serious reliance interests” or if it has “sustained serious erosion from our recent decisions.” Al-Sharif v. United States Citizenship and Immigr. Servs., 734 F.3d 207, 212 (3d Cir. 2013) (quotation marks and citations omitted).
There is not even a clear consensus about what the Wofford test entails, even among the parties to this appeal who favor its retention. McCarthan argues in favor of the Wofford test as applied in Bryant but quibbles over the meaning of step four. *1098 The warden agrees that the Wofford test is correct but describes its analysis as a three-part test: “(1) a Supreme Court decision of statutory construction has changed controlling circuit law retroactively; (2) in a way that establishes a fundamental defect in the prisoner’s conviction or sentence and renders his continued detention illegal; and (3) the prisoner had no reasonable opportunity for a judicial remedy of that fundamental defect in another proceeding.” And the National Association of Criminal Defense Lawyers as amicus curiae first describes Wofford as a four-factor test, and then proposes a new test: “whether the prisoner had a genuine opportunity to raise his claim in an adequate and effective fashion.” This cacophony highlights that we do not face a problem of overturning a long-established, settled test. In fact, it is difficult to imagine how someone could rely on a test so inscrutable. And when reliance interests are minimal, a court may overrule its own precedent. Garner, et al., supra, at 401, 408-09.
Third,. our precedents have proved unworkable. Wofford has placed a heavy burden on courts in this Circuit. Hundreds, perhaps thousands, of prisoners have filed petitions citing the Wofford test in the various districts where federal prisons are located in this Circuit. These doomed collateral attacks have required wardens to defend decades-old sentencing determinations and resurrected the exact problems that Congress attempted to solve when it created the remedy by motion. Hayman, 342 U.S. at 219, 72 S.Ct. 263.
And the Wofford test is burdensome to apply. For example, deciding whether circuit precedent foreclosed an argument, whether the Supreme Court abrogated that precedent, and whether that decision applies retroactively on collateral review can be a difficult and controversial task. See, e.g., McCarthan, 811 F.3d at 1247-50 (discussing the argument that circuit precedent about a Georgia statute did not foreclose McCarthan from challenging a Florida statute); In re Watkins, 810 F.3d 375, 380 (6th Cir. 2015) (describing the circuit split regarding whether Johnson v. United States, - U.S. -, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015), applies retroactively on collateral review). In this appeal, the panel disagreed about how to apply the Wofford test to McCarthan. The separate concurring opinion stated that “the cumbersome nature of that test leads to just the type of confusion we have here,” namely that the steps, of the analysis overlap. McCarthan, 811 F.3d at 1257 (Proctor, J., concurring). In Samak, we had to apply the law of another circuit to answer these questions because a federal inmate imprisoned in our circuit was sentenced in another. 766 F.3d at 1275 n.3. In Cortes-Morales, we were asked to decide whether the logic of the Wofford test should extend to retroactive amendments to state legislation. 827 F.3d at 1016. Hard questions with no predictable answers will continue to arise if we insist on applying a test unbound by the text.
Even the questions of the Wofford test that seem straightforward prove difficult. The Wofford test requires that we determine whether the current sentence exceeds the statutory maximum. The panel opinion in this appeal went to great lengths to distinguish this inquiry from the merits of the motion to vacate. The difference, according to the panel, is that the Wofford test looks at both “invalid predicate convictions that a federal prisoner could not have challenged in his initial § 2255 petition because any challenge was squarely foreclosed by binding Circuit precedent that the Supreme Court only subsequently overturned (‘squarely foreclosed convictions’)” and “invalid predicate convictions that a defendant could have, but failed to, challenge earlier (‘erroneous *1099 ly counted convictions’),” but the merits inquiry looks only at the former. McCarthan, 811 F.3d at 1251. In the final part of the Wofford test, we are expected to resolve “whether the saving[ ] clause in § 2255(e) reaches” the kind of claim presented, Bryant, 738 F.3d at 1274, but this circular standard is meaningless when the issue is one of first impression.
All of these difficult and convoluted determinations are made in a threshold jurisdictional analysis. The labyrinthian analysis required by our precedents is not a prudent use of judicial resources. See Duckworth, 454 U.S. at 4, 102 S.Ct. 18 (“Creating a new exception” means that “[s]ignificantly more time and resources would be consumed as district and appellate courts examined the merits to determine whether a claim met the requisite level of validity.”). True, it is often “more important that the applicable rule of law be settled than that it be settled right.” Agostini v. Felton, 521 U.S. 203, 235, 117 S.Ct. 1997, 138 L.Ed.2d 391 1997 (quoting Burnet v. Coronado Oil & Gas Co., 285 U.S. 393, 406, 52 S.Ct. 443, 76 L.Ed. 815 (1932) (Brandeis, J., dissenting)). But the Wofford test repeatedly unsettles the law in this Circuit.
Because the Wofford test ignores the text of the saving clause, induces no reliance, and burdens our courts, it does more harm than good. “[T]his weighing of alternative harms is the normal assessment in deciding whether to overrule precedent.” Garner, et al., supra, at 388. In contrast, being faithful to the text of the saving clause makes our task simple, predictable, and sensible. This appeal presents the rare circumstance where we should overturn our precedents.
Contrary to McCarthan’s argument, this appeal presents no problems of justiciability. McCarthan argues that because both parties accept the Wofford test and “[n]either party stands to obtain meaningful relief from a re-consideration of [it],” this Court lacks jurisdiction to reconsider its precedents. See U.S. Const. Art. III, § 2, cl. 1. Nonsense. As the Warden correctly responds, there is a live case or controversy about whether McCarthan is entitled to relief, “notwithstanding any agreement on the rules to be applied.” We have a responsibility to interpret the law correctly. And the Supreme Court has modeled the use of an amicus curiae to aid in this endeavor. See Miscellaneous Order, Irizarry v. United States, 552 U.S. 1135, 128 S.Ct. 977, 169 L.Ed.2d 799 (2008) (inviting Peter B. Rutledge to brief and argue the case, as amicus curiae, in support of the judgment below); Miscellaneous Order, Beckles v. United States, - U.S. -, 137 S.Ct. 23, 195 L.Ed.2d 895 (2016) (inviting Adam K. Mortara to brief and argue the case, as amicus curiae, in support of the judgment below). We must interpret the statute that governs this appeal and apply it to the parties before us. We have done so.
A motion to vacate is inadequate or ineffective to test the legality of a prisoner’s detention only when it cannot remedy a particular kind of claim. Even if a prisoner’s claim fails under circuit precedent, a motion to vacate remains an adequate and effective remedy for a prisoner to raise the claim and attempt to persuade the court to change its precedent, and failing that, to seek certiorari in the Supreme Court. McCarthan does not qualify for the saving clause because his claim that escape is not a violent felony is cognizable under section 2255. Because he “was free to bring” this claim about the interpretation of his sentencing law in his initial motion to vacate, the remedy by motion was an “adequate and effective means for testing such an argument.” Prost, 636 F.3d at 580. He cannot now use the saving *1100 clause to make that claim in a petition for a writ of habeas corpus.
IV. CONCLUSION
For all the above reasons, we overrule the Wofford test as applied in Bryant and Mackey and AFFIRM the order denying McCarthan’s petition for a writ of habeas corpus.