[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 24-10337

Non-Argument Calendar

_____

THOMAS A. GUERRIERO,

Petitioner-Appellant,

*versus*

MIAMI RRM,
Director,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:23-cv-62252-BB

_____

Before WILSON, LUCK, and ANDERSON, Circuit Judges.

PER CURIAM:

Thomas A. Guerriero, a federal prisoner in the custody of Miami Residential Reentry Management ("Miami RRM") proceeding *pro se*, appeals the district court's order denying his habeas corpus petition. On appeal, he argues that the Bureau of Prisons ("BOP") improperly refused to apply all of his earned time credits under the First Step Act of 2018 ("FSA")[1] to his sentence.

When reviewing the denial of a petition for a writ of habeas corpus, we review questions of law *de novo* and the district court's factual findings for clear error. *Andrews v. Warden*, 958 F.3d 1072, 1076 (11th Cir. 2020).

Title 28 U.S.C. § 2241 permits district courts to grant habeas relief for petitioners held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Challenges to the execution of a federal prisoner's sentence, such as the deprivation of good time credits or parole determinations, rather than his sentence's validity may be brought through a petition for writ of habeas corpus pursuant to § 2241. *McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076, 1089, 1093 (11th Cir. 2017) (*en banc*).

---

[1] Pub. L. No. 115-391, 132 Stat. 5194 (2018).

The FSA, in relevant part, mandates that the BOP offer incentives to prisoners who complete certain recidivism reduction programs and other productive activities while in custody. 18 U.S.C. § 3632(d)(4). Under the FSA, prisoners who have been determined to have a low risk of recidivism are eligible to earn up to 15 days in FSA time credits for every 30 days of successful participation in such programs. *Id.* § 3632(d)(4)(A); *see also* 28 C.F.R. § 523.42(c). Section 3632(d)(4)(C) provides that the BOP can apply these FSA time credits to either lengthen an eligible prisoner's prerelease custody, such as home confinement or half-way house placement, or to advance transfer to supervised release. 18 U.S.C. § 3632(d)(4)(C). However, under § 3624(g)(3), "the Director of the [BOP] may transfer [a] prisoner to begin any term of supervised release at an earlier date, *not to exceed 12 months*, based on the application of [FSA] time credits under section 3632." 18 U.S.C. § 3624(g)(3) (emphasis added); *see also* 28 C.F.R. § 523.44(d)(3) ("The [BOP] may apply FSA Time Credits toward early transfer to supervised release under 18 U.S.C. § 3624(g) only when . . . [t]he application of FSA Time Credits would result in transfer to supervised release *no earlier than 12 months* before the date that transfer . . . would have otherwise occurred.") (emphasis added). Further, § 3632(d)(4)(C) does not permit the BOP to apply a prisoner's FSA time credits to his period of supervised release. *See* 18 U.S.C. § 3632(d)(4)(C).

Here, the district court correctly found that the BOP had already applied the maximum 12 months' worth of earned time credits allowed by the FSA to begin Guerriero's term of supervised release.  On appeal, Guerriero relies heavily on subsection (g)(10), which states "[t]he time limits under subsections (b) and (c) shall not apply to prerelease custody under this subsection."  18 U.S.C. § 3624(g)(10).  Contrary to Guerriero's assertions, that subsection of the FSA is irrelevant to him, because subsections (b) and (c) of the same are irrelevant to him.  Subsection (b) governs good time credit, and subsection (c) generally authorizes prerelease programs, such as reentry.  *See generally* 18 U.S.C. §§ 3624(b), (c).  Guerriero is not subject to either of those subsections, or their "time limits," so § 3624(g)(10) is irrelevant in this case.

Further, Guerriero acknowledges that 365 days of FSA time credits have already been applied towards his sentence.  The FSA's plain language does not entitle him to claim more than that.  18 U.S.C. § 3624(g)(3).

Guerriero also asserts that any additional outstanding time credits (over and above the 12 months which can be,  and have already been, allowed to accelerate the beginning of Guerriero's term of supervised release) should be applied to reduce his three-year term of supervised release.  Guerriero relies upon the first sentence of § 3632(d)(4)(C), which provides:

> Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied

toward time in prerelease custody or supervised re-
lease.

18 U.S.C. § 3632(d)(4)(C)(first sentence).  It is not clear from that sentence, read in isolation, whether the time credits are to be used to reduce incarceration time so as to accelerate the beginning of prerelease custody or supervised release, on the one hand, or, on the other hand, are to be used to reduce the actual time imposed by the original sentence of supervised release (in Guerriero's case his three-year supervised release sentence).  However, the next sentence of § 3632(d)(4)(C) points to the former as the meaning of Congress.  It instructs the Bureau of Prisons how to implement the application of the time credits provided for in the first sentence.  That second sentence provides:

> The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release.

*Id.* (second sentence).  In other words, the second sentence clearly indicates that Congress meant that the time credits are to be used to reduce incarceration time so as to accelerate the beginning of prerelease custody or supervised release, or, as the second sentence of § 3632(d)(4)(C) says: "transfer eligible prisoners . . . into prelease custody or supervised release."  This meaning is also suggested by the title of § 3632(d)(4)(C): "Application of time credits toward pre-release custody or supervised release." [2]  The "[u]se of the word

---

[2] *Dubin v. United States*, 599 U.S. 110, 120–21 (2023)("This Court has long considered that the title of a statute and the heading of a section are tools available

6                    Opinion of the Court                24-10337

'toward' means that credits can be applied to bring 'time in prerelease custody or supervised release' closer to occurring because credits applied 'toward' something generally means to bring that something closer to happening." *United States v. Calabrese*, 2023 WL 1969753, at *2 (N.D. Ohio Feb. 13, 2023)(quoting Black's Law Dictionary (11th ed. 2019) ("defining 'toward,' in relevant part, as 'in the direction of; on a course or line leading to (some place or something)'")). This meaning is also indicated by § 3624(g), the provision to which the second sentence of § 3632(d)(4)(C) looked with respect to the implementation of the time credits. Section § 3624(g)(3) provides:

> Supervised release.--If the sentencing court included as a part of the prisoner's sentence a requirement that the prisoner be placed on a term of supervised release after imprisonment pursuant to section 3583, the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632.

18 U.S.C. § 3624(g)(3). Thus, considering the entirety of the relevant statutory language, we conclude that Congress intended the

---

for the resolution of a doubt about the meaning of a statute.")(internal quotations and citations omitted).

time credits to be used to reduce incarceration time so as to accelerate the beginning of prerelease custody or supervised release.

As is apparent from the overall statutory language, the obvious purpose of Congress—in providing for these time credits—was to provide an incentive for prisoners to attend the recidivism reduction programs Congress was devising, and the obvious incentive was that the time credits would reduce a prisoner's incarceration time—not that the credits would reduce the post-incarceration supervised release.  The regulations also reflect this obvious congressional purpose.  *See* 28 C.F.R. § 523.44 ("Application of FSA Time Credits").  Section 523.44(b) provides, in relevant part:

> [T]he Bureau may apply FSA Time Credits toward prerelease custody or *early* transfer to supervised release under 18 U.S.C. 3624(g) only if an eligible inmate has:
>
>> (1) Earned FSA Time Credits in an amount that is equal to the remainder of the inmate's imposed term of imprisonment;

*Id.* § 523.44(b) (emphasis added).

For the reasons set out above, we readily conclude that § 3632(d)(4)(C) means that the FSA time credits are to be used to reduce incarceration time so as to accelerate the beginning of the supervised release time that was imposed at sentencing on the prisoner.  Accordingly, we reject Guerriero's attempt to have his excess time credits applied to reduce his three-year supervised release term.  Every case to address this issue has agreed with the

interpretation set out above, save only one: *Dyer v. Fulgam*, 2022 WL 1598249, at \*1 (E.D. Tenn. May 20, 2022), *appeal dismissed as moot, Dyer v. Fulgam*, No. 22-5608 (6th Cir. June 6, 2023).  *See, e.g., Singleton v. Neely*, 2023 WL 9550049 (N.D. Ala. Dec. 21, 2023), report and recommendation adopted, 2024 WL 476949 (N.D. Ala. Feb. 7, 2024); *Williams v. Fitch*, 2024 WL 737803 (M.D. Ala. Jan. 31, 2024), *report and recommendation adopted*, 2024 WL 734477 (M.D. Ala. Feb. 22, 2024); *Alexander v. Joseph*, 2023 WL 6798866 (N.D. Fla. Sept. 12, 2023), *report and recommendation adopted*, 2023 WL 6794979 (N.D. Fla. Oct. 13, 2023); *Harrison v. Fed. Bureau of Prisons*, 2022 WL 17093441 (S.D. Fla. Nov. 21, 2022)).

For the foregoing reasons, the judgment of the district court is

**AFFIRMED.**